# EXHIBIT A

**No. 15.  An act relating to access to legally protected health care activity and regulation of health care providers.**

(S.37)

It is hereby enacted by the General Assembly of the State of Vermont:

* * * Definitions * * *

Sec. 1.  1 V.S.A. § 150 is added to read:

§ 150.  LEGALLY PROTECTED HEALTH CARE ACTIVITY

(a)  "Gender-affirming health care services" means all supplies, care, and services of a medical, behavioral health, mental health, surgical, psychiatric, therapeutic, diagnostic, preventative, rehabilitative, or supportive nature, including medication, relating to the treatment of gender dysphoria and gender incongruence.  "Gender-affirming health care services" does not include conversion therapy as defined by 18 V.S.A. § 8351.

(b)(1)  "Legally protected health care activity" means:

(A)  the exercise and enjoyment, or attempted exercise and enjoyment, by any person of rights to reproductive health care services or gender-affirming health care services secured by this State;

(B)  any act or omission undertaken to aid or encourage, or attempt to aid or encourage, any person in the exercise and enjoyment, or attempted exercise and enjoyment, of rights to reproductive health care services or gender-affirming health care services secured by this State, provided that the provision of such a health care service by a person duly licensed under the laws of this State and physically present in this State shall be legally protected

if the service is permitted under the laws of this State, regardless of the

patient's location; or

(C) the provision, issuance, or use of, or enrollment in, insurance or

other health coverage for reproductive health care services or gender-affirming

health care services that are legal in this State, or any act to aid or encourage,

or attempt to aid or encourage, any person in the provision, issuance, or use of,

or enrollment in, insurance or other health coverage for those services,

regardless of the location of the insured or individual seeking insurance or

health coverage, if the insurance or health coverage is permitted under the laws

of this State.

(2)  Except as provided in subdivision (3) of this subsection, the

protections applicable to "legally protected health care activity" shall not apply

to a lawsuit; judgment; or civil, criminal, or administrative action that is based

on conduct for which an action would exist under the laws of this State if the

course of conduct that forms the basis for liability had occurred entirely in this

State.

(3)  Notwithstanding subdivision (2) of this subsection, the provision of a

health care service by a person duly licensed under the laws of this State and

physically present in this State shall be legally protected if the service is

permitted under the laws of this State, regardless of the patient's location or

whether the health care provider is licensed in the state where the patient is

located at the time the service is rendered.

(c)(1)  "Reproductive health care services" means all supplies, care, and

services of a medical, behavioral health, mental health, surgical, psychiatric,

therapeutic, diagnostic, preventative, rehabilitative, or supportive nature,

including medication, relating to pregnancy, contraception, assisted

reproduction, pregnancy loss management, or the termination of a pregnancy.

(2)  "Reproductive health care services" includes medication that was

approved by the U.S. Food and Drug Administration (FDA) for termination of

a pregnancy as of January 1, 2023, regardless of the medication's current FDA

approval status:

(A)  when such medication is procured, ordered, stored, distributed,

prescribed, dispensed, or administered, or a combination thereof, by a person

duly licensed under the laws of this State, as long as the licensee's actions

conform to the essential standards of acceptable and prevailing practice for the

licensee's profession; or

(B)  when such medication is used by an individual.

* * * Medical Malpractice * * *

Sec. 2.  8 V.S.A. chapter 129 is amended to read:

CHAPTER 129.  INSURANCE TRADE PRACTICES

* * *

§ 4722.  DEFINITIONS

* * *

(4)(A)  "Abusive litigation" means  litigation or other legal action to
deter, prevent, sanction, or punish any person engaging in legally protected
health care activity by:

(i)  filing or prosecuting any action in any other state where
liability, in whole or part, directly or indirectly, is based on legally protected
health care activity that occurred in this State, including any action in which
liability is based on any theory of vicarious, joint, or several liability derived
therefrom; or

(ii)  attempting to enforce any order or judgment issued in
connection with any such action by any party to the action or any person acting
on behalf of a party to the action.

(B)  A lawsuit shall be considered to be based on conduct that
occurred in this State if any part of any act or omission involved in the course
of conduct that forms the basis for liability in the lawsuit occurs or is initiated
in this State, whether or not such act or omission is alleged or included in any
pleading or other filing in the lawsuit.

(5)  "Legally protected health care activity" has the same meaning as in
1 V.S.A. § 150.

* * *

§ 4724.  UNFAIR METHODS OF COMPETITION OR UNFAIR OR

DECEPTIVE ACTS OR PRACTICES DEFINED

The following are hereby defined as unfair methods of competition or unfair

or deceptive acts or practices in the business of insurance:

* * *

(7)  Unfair discrimination; arbitrary underwriting action.

(A)  Making or permitting any unfair discrimination between insureds

of the same class and equal risk in the rates charged for any contract of

insurance, or in the dividends or other benefits payable thereon, or in any other

of the terms and conditions of such contracts.

* * *

(F)(i)  Discriminating against a health care provider, as defined by

18 V.S.A. § 9496, or adjusting or otherwise calculating a health care provider's

risk classification or premium charges on the basis that:

(I)  the health care provider provides or assists in the provision

of legally protected health care activity that is unlawful in another state;

(II)  another state's laws create potential or actual liability for

that activity;

(III)  abusive litigation against a provider concerning legally

protected health care activity resulted in a claim, settlement, or judgement

against the provider; or

(IV)  the license of the provider has been disciplined in any way

by another state based solely on the provider's provision of legally protected

health care activity.

(ii)  For purposes of this subdivision (F), it shall not be unfairly

discriminatory nor an arbitrary underwriting action against a health care

provider if the risk classifications, premium charges, or other underwriting

considerations are based on factors other than those listed in subdivision (i) of

this subdivision (F).

* * *

* * * Insurance Coverage * * *

Sec. 3.  8 V.S.A. § 4088m is added to read:

§ 4088m.  COVERAGE FOR GENDER-AFFIRMING HEALTH CARE

SERVICES

(a)  Definitions.  As used in this section:

(1)  "Gender-affirming health care services" has the same meaning as in

1 V.S.A. § 150.

(2)  "Health insurance plan" means Medicaid and any other public health

care assistance program, any individual or group health insurance policy, any

hospital or medical service corporation or health maintenance organization

subscriber contract, or any other health benefit plan offered, issued, or renewed

for any person in this State by a health insurer as defined by 18 V.S.A. § 9402.

For purposes of this section, health insurance plan includes any health benefit

plan offered or administered by the State or any subdivision or instrumentality

of the State. The term does not include benefit plans providing coverage for a

specific disease or other limited benefit coverage, except that it includes any

accident and sickness health plan.

(b) Coverage.

(1) A health insurance plan shall provide coverage for gender-affirming

health care services that:

(A) are medically necessary and clinically appropriate for the

individual's diagnosis or health condition; and

(B) are included in the State's essential health benefits benchmark

plan.

(2) Coverage provided pursuant to this section by Medicaid or any other

public health care assistance program shall comply with all federal

requirements imposed by the Centers for Medicare and Medicaid Services.

(3) Nothing in this section shall prohibit a health insurance plan from

providing greater coverage for gender-affirming health care services than is

required under this section.

(c) Cost sharing. A health insurance plan shall not impose greater

coinsurance, co-payment, deductible, or other cost-sharing requirements for

coverage of gender-affirming health care services than apply to the diagnosis

and treatment of any other physical or mental condition under the plan.

Case 2:23-cv-00229-wks   Document 1-1   Filed 07/25/23   Page 9 of 30

Sec. 4.  8 V.S.A. § 4099e is added to read:

§ 4099e.  COVERAGE FOR ABORTION AND ABORTION-RELATED

SERVICES

(a)  Definitions.  As used in this section:

(1)  "Abortion" means any medical treatment intended to induce the

termination of, or to terminate, a clinically diagnosable pregnancy except for

the purpose of producing a live birth.

(2)  "Health insurance plan" means Medicaid and any other public health

care assistance program, any individual or group health insurance policy, any

hospital or medical service corporation or health maintenance organization

subscriber contract, or any other health benefit plan offered, issued, or renewed

for any person in this State by a health insurer as defined by 18 V.S.A. § 9402.

For purposes of this section, health insurance plan shall include any health

benefit plan offered or administered by the State or any subdivision or

instrumentality of the State.  The term shall not include benefit plans providing

coverage for a specific disease or other limited benefit coverage, except that it

shall include any accident and sickness health plan.

(b)  Coverage.  A health insurance plan shall provide coverage for abortion

and abortion-related care.

(c)  Cost sharing.  The coverage required by this section shall not be subject

to any co-payment, deductible, coinsurance, or other cost-sharing requirement

or additional charge, except:

(1)  to the extent such coverage would disqualify a high-deductible

health plan from eligibility for a health savings account pursuant to 26 U.S.C.

§ 223; and

(2)  for coverage provided by Medicaid.

Sec. 5.  STATE PLAN AMENDMENT

The Agency of Human Services shall seek a state plan amendment from the

Centers for Medicare and Medicaid Services or federal authorities if needed to

allow Vermont's Medicaid program to provide coverage consistent with this

act.

* * * Professional Regulation * * *

Sec. 6.  3 V.S.A. § 129a is amended to read:

§ 129a.  UNPROFESSIONAL CONDUCT

(a)  In addition to any other provision of law, the following conduct by a

licensee constitutes unprofessional conduct.  When that conduct is by an

applicant or person who later becomes an applicant, it may constitute grounds

for denial of a license or other disciplinary action.  Any one of the following

items or any combination of items, whether the conduct at issue was

committed within or outside the State, shall constitute unprofessional conduct:

* * *

(7)  Willfully making or filing false reports or records in the practice of

the profession, willfully impeding or obstructing the proper making or filing of

reports or records, or willfully failing to file the proper reports or records, or

willfully providing inaccurate health or medical information to a patient,

including purposeful misrepresentation of a patient's health status.

* * *

(29) Providing or claiming to provide services or medications that are

purported to reverse the effects of a medication abortion.

* * *

(f)(1) Health care providers. Notwithstanding subsection (e) of this section

or any other law to the contrary, no health care provider who is certified,

registered, or licensed in Vermont shall be subject to professional disciplinary

action by a board or the Director, nor shall a board or the Director take adverse

action on an application for certification, registration, or licensure of a

qualified health care provider, based solely on:

(A) the health care provider providing or assisting in the provision of

legally protected health care activity; or

(B) a criminal, civil, or disciplinary action in another state against the

health care provider that is based solely on the provider providing or assisting

in the provision of legally protected health care activity.

(2) Definitions. As used in this subsection:

(A) "Health care provider" means a person who provides

professional health care services to an individual during that individual's

medical care, treatment, or confinement.

Case 2:23-cv-00229-wks Document 1-1 Filed 07/25/23 Page 12 of 30

(B) "Health care services" means services for the diagnosis,

prevention, treatment, cure, or relief of a physical or mental health condition,

including procedures, products, devices, and medications.

(C) "Legally protected health care activity" has the same meaning as

in 1 V.S.A. § 150.

Sec. 7. 26 V.S.A. § 1354 is amended to read:

§ 1354. UNPROFESSIONAL CONDUCT

* * *

(d)(1) Health care providers. Notwithstanding any other law to the

contrary, no health care provider who is certified, registered, or licensed in

Vermont shall be subject to professional disciplinary action by the Board, nor

shall the Board take adverse action on an application for certification,

registration, or licensure of a qualified health care provider, based solely on:

(A) the health care provider providing or assisting in the provision of

legally protected health care activity; or

(B) a criminal, civil, or disciplinary action in another state against the

health care provider that is based solely on the provider providing or assisting

in the provision of legally protected health care activity.

(2) Definitions. As used in this subsection:

(A) "Health care provider" means a person who provides

professional health care services to an individual during that individual's

medical care, treatment, or confinement.

(B)  "Health care services" means services for the diagnosis,

prevention, treatment, cure, or relief of a physical or mental health condition,

including procedures, products, devices, and medications.

(C)  "Legally protected health care activity" has the same meaning as

in 1 V.S.A. § 150.

* * * Pregnancy Centers * * *

Sec. 8.  9 V.S.A. chapter 63, subchapter 11 is added to read:

Subchapter 11.  Pregnancy Services Centers

§ 2491.  FINDINGS; LEGISLATIVE INTENT

(a)  Findings.  The General Assembly finds that:

(1)  Centers that seek to counsel clients against abortion, often referred to

as crisis pregnancy centers or limited-services pregnancy centers, have become

common across the country, including in Vermont.  Accurate information

about the services that a limited-services pregnancy center performs, in

addition to forthright acknowledgement of its limitations, is essential to enable

individuals in this State to make informed decisions about their care.  This

includes individuals being informed of whether they are receiving services

from a licensed and qualified health care provider at a limited-services

pregnancy center, as this allows individuals to determine if they need to seek

medical care elsewhere in order to continue or terminate a pregnancy.

(2)  Although some limited-services pregnancy centers openly

acknowledge in their advertising, on their websites, and at their facilities that

they neither provide abortions nor refer clients to other providers of abortion

services, others provide confusing and misleading information to pregnant

individuals contemplating abortion by leading those individuals to believe that

their facilities offer abortion services and unbiased counseling.  Some limited-

services pregnancy centers have promoted patently false or biased medical

claims about abortion, pregnancy, contraception, and reproductive health care

providers.

　　(3)  False and misleading advertising by centers that do not offer or refer

clients for abortion is of special concern to the State because of the time-

sensitive and constitutionally protected nature of the decision to continue or

terminate a pregnancy.  When a pregnant individual is misled into believing

that a center offers services that it does not in fact offer or receives false or

misleading information regarding health care options, the individual loses time

crucial to the decision whether to terminate a pregnancy and may lose the

option to choose a particular method or to terminate a pregnancy at all.

　　(4)  Telling the truth is how trained health care providers demonstrate

respect for patients, foster trust, promote self-determination, and cultivate an

environment where best practices in shared decision-making can flourish.

Without veracity in information and communication, it is difficult for

individuals to make informed, voluntary choices that are essential to one's

sense of personal agency and autonomy.

(5)  Advertising strategies and educational information about health care options that lack transparency, use misleading or ambiguous terminology, misrepresent or obfuscate services provided, or provide factually inaccurate information are a form of manipulation that disrespects individuals, undermines trust, broadens health disparity, and can result in patient harm.

(b)  Intent.

(1)  It is the intent of the General Assembly to ensure that the public is provided with accurate, factual information about the types of health care services that are available to pregnant individuals in this State.  The General Assembly respects the constitutionally protected right of each individual to personal reproductive autonomy, which includes the right to receive clear, honest, and nonmisleading information about the individual's options and to make informed, voluntary choices after considering all relevant information.

(2)  The General Assembly respects the right of limited-services pregnancy centers to counsel individuals against abortion, and nothing in this subchapter should be construed to regulate, limit, or curtail such advocacy.

§ 2492.  DEFINITIONS

As used in this subchapter:

(1)  "Abortion" means any medical treatment intended to induce the termination of, or to terminate, a clinically diagnosable pregnancy except for the purpose of producing a live birth.

(2)  "Client" means an individual who is inquiring about or seeking

services at a pregnancy services center.

(3)  "Emergency contraception" means any drug approved by the U.S.

Food and Drug Administration as a contraceptive method for use after sexual

intercourse, whether provided over the counter or by prescription.

(4)  "Health information" means any oral or written information in any

form or medium that relates to health insurance or the past, present, or future

physical or mental health or condition of a client.

(5)  "Limited-services pregnancy center" means a pregnancy services

center that does not directly provide, or provide referrals to clients for,

abortions or emergency contraception.

(6)  "Pregnancy services center" means a facility, including a mobile

facility, where the primary purpose is to provide services to individuals who

are or may be pregnant and that either offers obstetric ultrasounds, obstetric

sonograms, or prenatal care to pregnant individuals or has the appearance of a

medical facility.  A pregnancy services center has the appearance of a medical

facility if two or more of the following factors are present:

(A)  The center offers pregnancy testing or pregnancy diagnosis, or

both.

(B)  The center has staff or volunteers who wear medical attire or

uniforms.

(C)  The center contains one or more examination tables.

(D)  The center contains a private or semiprivate room or area containing medical supplies or medical instruments.

(E)  The center has staff or volunteers who collect health information from clients.

(F)  The center is located on the same premises as a State-licensed medical facility or provider or shares facility space with a State-licensed medical provider.

(7)  "Premises" means land and improvements or appurtenances or any part thereof.

§ 2493.  UNFAIR AND DECEPTIVE ACT

(a)  It is an unfair and deceptive act and practice in commerce and a violation of section 2453 of this title for any limited-services pregnancy center to disseminate or cause to be disseminated to the public any advertising about the services or proposed services performed at that center that is untrue or clearly designed to mislead the public about the nature of services provided. Advertising includes representations made directly to consumers; marketing practices; communication in any print medium, such as newspapers, magazines, mailers, or handouts; and any broadcast medium, such as television or radio, telephone marketing, or advertising over the Internet such as through websites and web ads.  For purposes of this chapter, advertising or the provision of services by a limited-services pregnancy center is an act in commerce.

Case 2:23-cv-00229-wks   Document 1-1   Filed 07/25/23   Page 18 of 30

(b)  Health care providers certified, registered, or licensed under Title 26 of
the Vermont Statutes Annotated who are employed by, contracted to provide
services for or on behalf of, or volunteer to provide services at a limited-
services pregnancy center shall be responsible for conducting and providing
health care services, information, and counseling at the center.  The failure of a
health care professional certified, registered, or licensed under Title 26 of the
Vermont Statutes Annotated to conduct or to ensure that health care services,
information, and counseling at the limited-services pregnancy services center
are conducted in accordance with State law and professional standards of
practice may constitute unprofessional conduct under 3 V.S.A. § 129a and
26 V.S.A. § 1354.

(c)  The Attorney General has the same authority to make rules, conduct
civil investigations, and bring civil actions with respect to violations of
subsection (a) of this section as provided under subchapter 1 of this chapter.

* * * Reports; Interstate Compacts * * *

Sec. 9.  18 V.S.A. § 9405 is amended to read:

§ 9405.  STATE HEALTH IMPROVEMENT PLAN; HEALTH RESOURCE
ALLOCATION PLAN

* * *

(b)  The Green Mountain Care Board, in consultation with the Secretary of
Human Services or designee, shall publish on its website the Health Resource
Allocation Plan identifying Vermont's critical health needs, goods, services,

and resources, which shall be used to inform the Board's regulatory processes,

cost containment and statewide quality of care efforts, health care payment and

delivery system reform initiatives, and any allocation of health resources

within the State.  The Plan shall identify Vermont residents' needs for health

care services, programs, and facilities; the resources available and the

additional resources that would be required to realistically meet those needs

and to make access to those services, programs, and facilities affordable for

consumers; and the priorities for addressing those needs on a statewide basis.

The Board may expand the Plan to include resources, needs, and priorities

related to the social determinants of health.  The Plan shall be revised

periodically, but not less frequently than once every four years.

* * *

(3)  The Board shall receive and consider public input on the Plan at a

minimum of one Board meeting and one meeting of the Advisory Committee

and shall give interested persons an opportunity to submit their views orally

and in writing.

(4)  The Board shall include reproductive health care services and

gender-affirming health care services, as those terms are defined in 1 V.S.A.

§ 150, in its Plan analysis.

(5)  As used in this section:

(A) "Health resources" means investments into the State's health care

system, including investments in personnel, equipment, and infrastructure

necessary to deliver:

* * *

Sec. 9a. AGENCY OF HUMAN SERVICES; STATE HEALTH

ASSESSMENT; COMMUNITY PROFILES

The Agency of Human Services shall work with LGBTQA+ community

stakeholders and health care providers during the upcoming State Health

Assessment and Community Profiles community engagement processes to

explore barriers to equitable access to gender-affirming health care services, as

defined in 1 V.S.A. § 150.

Sec. 10. BOARD OF MEDICAL PRACTICE; OFFICE OF PROFESSIONAL

REGULATION; INTERSTATE COMPACTS; REPORT

On or before November 1, 2025, the Office of Professional Regulation, in

consultation with the Board of Medical Practice, shall submit a report to the

House Committee on Health Care and the Senate Committee on Health and

Welfare with findings and recommendations for legislative action to address

any concerns regarding the State's participation, or contemplated participation,

in interstate licensure compacts as a result of the provisions of this act,

including the State's participation in the Nurse Licensure Compact pursuant to

26 V.S.A. chapter 28, subchapter 5 and the Interstate Medical Licensure

Compact pursuant to 26 V.S.A. chapter 23, subchapter 3A.

Sec. 10a. 26 V.S.A. chapter 56 is amended to read:

CHAPTER 56.  OUT-OF-STATE TELEHEALTH LICENSURE &

REGISTRATION AND INTERSTATE COMPACTS

Subchapter 1.  Out-of-State Telehealth Licensure and Registration

* * *

Subchapter 2.  Interstate Compacts; Health Care Provider Compacts

§ 3071.  HEALTH CARE PROVIDER COMPACTS; DIRECTION TO

VERMONT REPRESENTATIVES

(a)  The General Assembly finds that a state's prohibition of or limitation on

the provision of gender-affirming health care services or reproductive health

care services, or both, as defined by 1 V.S.A. § 150, prohibits health care

providers from following health care best practices and is a failure on the part

of the state to provide health care services that are medically necessary and

clinically appropriate for its residents.  Therefore, it is the General Assembly's

intent to protect the ability of professionals licensed, certified, or registered in

Vermont, and professionals from other member states seeking to practice a

profession in Vermont pursuant to an interstate compact or agreement, to have

the benefit of compacts and agreements while at the same time engaging in,

providing, or otherwise facilitating, personally or professionally, gender-

affirming health care and reproductive health care services.

(b)  Vermont's representative or delegate for an interstate compact or

agreement related to health care shall seek an amendment or exception to the

language, rules, directives, or bylaws of the compact or agreement, as

necessary, so that if a licensee is disciplined by another state solely for

providing or assisting in the provision of gender-affirming health care services

or reproductive health care services that would be legal and meet professional

standards of care if provided in Vermont, the compact or agreement does not

require that Vermont take professional disciplinary action against the licensee.

* * * Emergency Contraception * * *

Sec. 11.  26 V.S.A. chapter 36, subchapter 1 is amended to read:

Subchapter 1.  General Provisions

* * *

§ 2022.  DEFINITIONS

As used in this chapter:

* * *

(22)  "Emergency contraception" means any drug approved by the U.S.

Food and Drug Administration as a contraceptive method for use after sexual

intercourse, whether provided over the counter or by prescription.

§ 2023.  CLINICAL PHARMACY; PRESCRIBING

* * *

(b)  A pharmacist may prescribe in the following contexts:

* * *

(2)  State protocol.

(A)  A pharmacist may prescribe, order, or administer in a manner consistent with valid State protocols that are approved by the Commissioner of Health after consultation with the Director of Professional Regulation and the Board and the ability for public comment:

* * *

(ix)  emergency prescribing of albuterol or glucagon while contemporaneously contacting emergency services; ~~and~~

(x)  tests for SARS-CoV for asymptomatic individuals or related serology for individuals by entities holding a Certificate of Waiver pursuant to the Clinical Laboratory Amendments of 1988 (42 U.S.C. § 263a); and

(xi)  emergency contraception.

* * *

Sec. 11a.  26 V.S.A. § 2077 is added to read:

§ 2077.  EMERGENCY CONTRACEPTION; VENDING MACHINES

(a)  A retail or institutional drug outlet licensed under this chapter or a postsecondary school, as defined in and subject to 16 V.S.A. § 176, may make over-the-counter emergency contraception and other nonprescription drugs or articles for the prevention of pregnancy or conception available through a vending machine or similar device.

(b)  Notwithstanding any provision of subsection 2032(h) of this chapter to the contrary, the Board may adopt rules in accordance with 3 V.S.A. chapter 25 to regulate the location, operation, utilization, and oversight of the vending

machines and similar devices described in subsection (a) of this section in a manner that balances consumer access with appropriate safeguards for theft prevention and safety.

* * * Higher Education; Health Care Services * * *

Sec. 12.  16 V.S.A. chapter 78 is added to read:

CHAPTER 78.  ACCESS TO REPRODUCTIVE AND GENDER-

AFFIRMING HEALTH CARE SERVICES

§ 2501.  DEFINITIONS

As used in this chapter:

(1)  "Gender-affirming health care readiness" means each institution's preparedness to provide gender-affirming health care services to students or assist students in obtaining gender-affirming health care services, including having in place equipment, protocols, patient educational materials, informational websites, and training for staff; provided, however, that gender-affirming health care readiness may include the provision of gender-affirming health care services.

(2)  "Gender-affirming health care services" has the same meaning as in 1 V.S.A. § 150.

(3)  "Institution" means the University of Vermont or a college in the Vermont State College system.

(4)  "Reproductive health care services" has the same meaning as in 1 V.S.A. § 150.

(5) "Reproductive health care readiness" means each institution's

preparedness to provide reproductive health care services to students or assist

students in obtaining reproductive health care services, including having in

place equipment, protocols, patient educational materials, informational

websites, and training for staff; provided, however, that reproductive health

care readiness may include the provision of reproductive health care services.

(6) "Telehealth" has the same meaning as in 26 V.S.A. § 3052.

§ 2502. GENDER-AFFIRMING HEALTH CARE AND REPRODUCTIVE

HEALTH CARE READINESS; REPORTS

(a) Each institution shall report to the Agency of Human Services annually,

on or before November 1, on the current status of its gender-affirming health

care and reproductive health care readiness, including:

(1) whether the institution has an operational health center on campus;

(2) whether the institution employs health care providers on campus;

(3) the types of gender-affirming health care services and reproductive

health care services that the institution offers to its students on campus and the

supports that the institution provides to students who receive those services;

(4) the institution's efforts to assist students with obtaining gender-

affirming health care services and reproductive health care services from

licensed health care professionals through telehealth;

(5) the institution's proximity to a hospital, clinic, or other facility that provides gender-affirming health care services or reproductive health care services, or both, that are not available to students on campus;

(6) the information that the institution provides regarding facilities that offer gender-affirming health care services and reproductive health care services that are not available to students on campus, including information regarding the scope of the services that are available at each such facility; and

(7) the availability, convenience, and cost of public transportation between the institution and the closest facility that provides gender-affirming health care services or reproductive health care services, or both, and whether the institution provides transportation.

(b) On or before January 31 of each year, the Agency of Human Services shall compile the materials submitted pursuant to subsection (a) of this section and report to the House Committees on Education, on Health Care, and on Human Services and the Senate Committees on Education and on Health and Welfare on the status of gender-affirming health care and reproductive health care readiness at Vermont's institutions.

Sec. 13. GENDER-AFFIRMING HEALTH CARE AND REPRODUCTIVE

HEALTH CARE READINESS; IMPLEMENTATION

Each institution shall submit its first report on the status of its gender-affirming health care and reproductive health care readiness as required under 16 V.S.A. § 2502(a) to the Agency of Human Services on or before November

1, 2023, and the Agency shall provide its first legislative report on or before

January 31, 2024.

* * * Prohibition on Disclosure of Protected Health Information * * *

Sec. 14.  18 V.S.A. § 1881 is amended to read:

§ 1881.  DISCLOSURE OF PROTECTED HEALTH INFORMATION

PROHIBITED

(a)  As used in this section:

(1)  "Business associate" has the same meaning as in 45 C.F.R.

§ 160.103.

(2)  "Covered entity" shall have has the same meaning as in 45 C.F.R.

§ 160.103.

(3)  "Legally protected health care activity" has the same meaning as in

1 V.S.A. § 150.

(2)(4)  "Protected health information" shall have has the same meaning

as in 45 C.F.R. § 160.103.

(5)  "Telehealth" has the same meaning as in 26 V.S.A. § 3052.

(b)  A covered entity or business associate shall not disclose protected

health information unless the disclosure is permitted under the Health

Insurance Portability and Accountability Act of 1996 (HIPAA).

(c)  In order to protect patients and providers who engage in legally

protected health care activity, a covered entity or business associate shall not

disclose protected health information related to a legally protected health care

activity for use in a civil or criminal action; a proceeding preliminary to a civil

or criminal action; or a probate, legislative, or administrative proceeding unless

the disclosure meets one or more of the following conditions:

(1) The disclosure is authorized by the patient or the patient's

conservator, guardian, or other authorized legal representative.

(2) The disclosure is specifically required by federal law, Vermont law,

or rules adopted by the Vermont Supreme Court.

(3) The disclosure is ordered by a court of competent jurisdiction

pursuant to federal law, Vermont law, or rules adopted by the Vermont

Supreme Court. An order compelling disclosure under this subdivision shall

include the court's determination that good cause exists to require disclosure of

the information related to legally protected health care activity.

(4) The disclosure is to be made to a person designated by the covered

entity or business associate and will be used solely in the defense of the

covered entity or business associate against a claim that has been made, or

there is a reasonable belief will be made, against the covered entity or business

associate in a civil or criminal action; a proceeding preliminary to a civil or

criminal action; or a probate, legislative, or administrative proceeding.

(5) The disclosure is to Vermont's Board of Medical Practice or Office

of Professional Regulation, as applicable, in connection with a bona fide

investigation in Vermont of a licensed, certified, or registered health care

provider or a bona fide investigation of whether an individual who is not

licensed, certified, or registered to practice a health care profession in Vermont

engaged in unauthorized practice in this State, whether in person or through

telehealth.

(6) The disclosure is to the Vermont Department of Health or the

Vermont Department of Disabilities, Aging, and Independent Living, or both,

in connection with a bona fide investigation of a licensed health care facility in

Vermont.

* * * Effective Dates * * *

Sec. 15.  EFFECTIVE DATES

(a) This section, Sec. 1 (definitions), Sec. 2 (medical malpractice), Secs. 6

and 7 (unprofessional conduct), Sec. 8 (pregnancy services centers), Secs. 9,

9a, and 10 (reports and analyses), Sec. 11a (emergency contraception; vending

machines), Secs. 12 and 13 (gender-affirming health care and reproductive

health care readiness; reports), and Sec. 14 (prohibition on disclosure of

protected health information) shall take effect on passage.

(b) Secs. 3 and 4 (insurance coverage) shall take effect on January 1, 2024

and shall apply to all health insurance plans issued on and after January 1,

2024 on such date as a health insurer offers, issues, or renews the health

insurance plan, but in no event later than January 1, 2025.

(c) Sec. 5 (state plan amendment) shall take effect on January 1, 2024,

except that the Agency of Human Services shall submit its request for approval

of Medicaid coverage of the services prescribed in Sec. 4 of this act, if needed,

No. 15                                                         Page 29 of 29
2023

to the Centers for Medicare and Medicaid Services on or before July 1, 2023,

and the Medicaid coverage shall begin on the later of the date of approval or

January 1, 2024.

   (d)  Sec. 10a (interstate compacts; state representatives) shall take effect on

July 1, 2023.

   (e)  Sec. 11 (emergency contraception) shall take effect on or before

September 1, 2023, on such date as the Commissioner of Health approves the

State protocol.

Date Governor signed bill:  May 10, 2023