## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF VERMONT

NATIONAL INSTITUTE OF FAMILY
AND LIFE ADVOCATES; ASPIRE
TOGETHER, INC., d/b/a ASPIRE
NOW; BRANCHES PREGNANCY
RESOURCE CENTER, INC.,

       *Plaintiffs,*

     v.

CHARITY CLARK, in her official
capacity as Attorney General of the State
of Vermont; SARAH COPELAND
HANZAS, in her official capacity as
Secretary of the State of Vermont;
KEVIN RUSHING, in his official
capacity as Director of the Office of
Professional Regulation; MARK
LEVINE, in his official capacity as the
Commissioner of Health of the State of
Vermont; The Individual Members of
the VERMONT BOARD OF
MEDICAL PRACTICE, in their official
capacities; The Individual Members of
the VERMONT STATE BOARD OF
NURSING, in their official capacities;
and COURTNEY BOWERS, in her
official capacity as Naturopathic
Physician Advisor,

       *Defendants.*

**PLAINTIFFS' RESPONSE IN
OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

**Case No. 2:23-cv-00229-wks**

## TABLE OF CONTENTS

STATEMENT OF FACTS ........................................................................ 1

ARGUMENT ........................................................................................ 3

I.    This Court has subject matter jurisdiction over Plaintiffs' challenge. ............. 3

    A.    Plaintiffs have standing to challenge the Advertising Prohibition. ........ 4

    B.    Plaintiffs have standing to challenge the Provider Restriction. ............ 6

II.    Plaintiffs state a claim that the Act violates the Free Speech Clause. ............ 9

    A.    The Act discriminates against Plaintiffs based on their pro-life viewpoint and the content of their speech................................................ 9

    B.    The Advertising Prohibition restricts non-commercial speech. ........... 11

    C.    The Provider Restriction regulates professional speech...................... 13

    D.    The Act fails heightened scrutiny......................................................... 15

III.    Plaintiffs have stated a claim that SB 37 is unconstitutionally vague. ......... 19

    A.    The Advertising Prohibition is unconstitutionally vague..................... 20

    B.    The Provider Restriction is unconstitutionally vague. ......................... 22

CONCLUSION.................................................................................... 25

CERTIFICATE OF SERVICE.................................................................. 26

## STATEMENT OF FACTS

Plaintiffs are pro-life pregnancy centers that aim to empower women to choose life-affirming alternatives to abortion through counseling, education, and material support. Compl. ¶¶ 13, 26, 43, ECF No. 1. Plaintiff National Institute of Family and Life Advocates (NIFLA) is a national nonprofit corporation with member facilities in Vermont, including Plaintiffs Aspire Together, Inc. and Branches Pregnancy Resource Center, Inc. *Id.* ¶¶ 9–11. Each of NIFLA's Vermont members offer free pregnancy services, such as pregnancy tests, counseling, and material support for new mothers. *Id.* ¶¶ 15, 27, 44, 59, 61. Some members, including Aspire, also provide medical services, such as ultrasounds or sonograms, under the direction of a licensed physician. *Id.* ¶¶ 16, 17, 38–40. Others, like Branches, provide counseling and resources but not medical services. *Id.* ¶ 53. None of the Plaintiffs provide or refer for abortions or "emergency contraception." *Id.* ¶¶ 14, 29, 34, 45, 49. Plaintiffs otherwise advertise their services through a variety of mediums. *Id.* ¶¶ 18, 30–32, 46.

On May 20, 2023, Governor Phil Scott signed SB 37, "[a]n act relating to access to legally protected health care activity and regulation of health care providers," into law. *Id.* ¶ 93 & Ex. A. SB 37 broadly defines "[p]regnancy services center" as "a facility, including a mobile facility, where the primary purpose is to provide services to individuals who are or may be pregnant and that either offers obstetric ultrasounds, obstetric sonograms, or prenatal care to pregnant individuals or has the appearance of a medical facility." Compl. ¶ 98 (quoting 9 V.S.A. § 2492(6)). But SB 37 singles out pro-life pregnancy centers by applying certain regulations only to "limited-services pregnancy centers," which it defines as a center that "does not directly

1

provide, or provide referrals to clients for, abortions or emergency contraception." *Id.* ¶¶ 100–01 (quoting 9 V.S.A. § 2492(5)). First, the Advertising Prohibition explicitly targets pro-life pregnancy centers, prohibiting only those centers from "disseminat[ing] or caus[ing] to be disseminated to the public any advertising about the services or proposed services performed at that center that is untrue or clearly designed to mislead the public about the nature of services provided." *Id.* ¶ 102 (quoting 9 V.S.A. § 2493(a)). The Act broadly defines "[a]dvertising" to include "representations made directly to consumers; marketing practices; communication in any print medium, such as newspapers, magazines, mailers, or handouts; and any broadcast medium, such as television or radio, telephone marketing, or advertising over the Internet such as through websites and web ads." *Id.* ¶ 104. It also provides that "advertising or the provision of services by a limited-services pregnancy center is an act in commerce," *id.* ¶ 106, even though Plaintiffs do not charge for any of their services, *id.* ¶¶ 15, 27, 44, 106.

Second, the Provider Restriction targets pro-life pregnancy centers by requiring that their licensed staff and volunteers "shall be responsible for conducting and providing health care services, information, and counseling at the center." *Id.* ¶ 123 (quoting 9 V.S.A. § 2493(b)). These licensed health care professionals must also "conduct or [] ensure that health care services, information, and counseling at the limited-services pregnancy services center are conducted in accordance with State law and professional standards of practice." *Id.* ¶ 124 (quoting 9 V.S.A. § 2493(b)). The Provider Restriction broadly defines "health information" to include "any oral or

written information in any form or medium that relates to . . . the past, present, or future physical or mental health or condition of a client." *Id.* ¶ 128 (quoting 9 V.S.A. 2492(4)). The Provider Restriction does not define "health care services," although the term is defined elsewhere in SB 37 as "services for the diagnosis, prevention, treatment, cure, or relief of a physical or mental health condition, including procedures, products, devices, and medications." *Id.* ¶ 127 (quoting 3 V.S.A. § 129a(f)(2)(B)). The Provider Restriction does not define the term "counseling."

On July 25, 2023, Plaintiffs filed suit challenging the Advertising Prohibition and the Provider Restriction, and on September 25, 2023, Defendants moved to dismiss. Plaintiffs respectfully urge this Court to deny that motion.

## ARGUMENT

### I.   This Court has subject matter jurisdiction over Plaintiffs' challenge.

The State argues Plaintiffs lack standing because they "have not alleged conduct prohibited by Vermont law." Defs.' Mem. 5, ECF No. 39. Not so. Plaintiffs allege "facts that . . . plausibly suggest that [they have] standing to sue." *Carter v. Health Port Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (cleaned up). Under the First Amendment, standing exists when a "law is aimed directly at plaintiffs, who, if their interpretation of the statute is correct, will have to take significant and costly compliance measures or risk" punishment. *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392 (1988); *United States v. Smith*, 945 F.3d 729, 737 (2d Cir. 2019).

Further, a plaintiff "need not demonstrate to a certainty that it will be prosecuted under the statute to show injury, but only that it has an actual and well-founded fear that the law will be enforced against it." *Nat'l Org. for Marriage, Inc. v.*

*Walsh*, 714 F.3d 682, 689 (2d Cir. 2013). And it makes no "difference [if] the state denie[s] that the plaintiff actually [i]s subject to the challenged law." *Id.* at 690.

Where "a statute is challenged for unconstitutional vagueness," plaintiffs need not "plead[] the specific statements they intend[] to make . . .  to support their professed fear of future prosecution" in order to establish standing. *Knife Rts., Inc. v. Vance*, 802 F.3d 377, 386 n.5 (2d Cir. 2015). Instead, "a plaintiff seeking to bring a vagueness challenge need show only the risk of chilling, not an actual chilling effect." *Farrell v. Burke*, 449 F.3d 470, 498 (2d Cir. 2006).

### A. Plaintiffs have standing to challenge the Advertising Prohibition.

Plaintiffs have adequately alleged that they (1) are limited-services pregnancy centers, Compl. ¶¶ 14, 16–17, 27, 29, 45, 59, 61, 98–101, 110; (2) advertise their services using means regulated by the Advertising Prohibition, *id.* ¶¶ 18, 30–32, 46, 104; (3) face a credible threat of enforcement against their current advertisements under the Advertising Prohibition, *id.* ¶¶ 35–36, 47, 50–51, 96, 105, 107, 109, 111– 12; and (4) are chilled from disseminating new advertisements, *id.* ¶ 114–20. This establishes standing twice over. Plaintiffs possess standing based on a credible threat of enforcement *and* because their speech is chilled.

The State does not deny that Plaintiffs are limited-services pregnancy centers who disseminate advertisements regulated by the Advertising Prohibition. Thus, Plaintiffs "own conduct falls within the ambit of" that provision. *See Smith*, 945 F.3d at 737. And while the State claims that "[t]he advertising provision does not impose any affirmative, blanket disclosure requirements," Defs.' Mem. 6, it does not state that such a disclosure is *never* required; nor does it clarify whether such a disclosure

is a defense to liability under the Advertising Prohibition. The State's failure to disclaim enforcement confirms that Plaintiffs face a credible threat of enforcement. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161 (2014).

Plaintiffs' advertisements stating that they provide information about, counseling concerning, or referrals for "safe and effective abortion pill reversal treatment" would at least "arguably" subject Plaintiffs to a credible "threat of prosecution" even under the State's narrow interpretation of the Advertising Prohibition. *Nat'l Org. for Marriage,* 714 F.3d at 689–90. As the State acknowledges, this issue is already being litigated elsewhere. Defs.' Mem. 6 n.1 (citing Compl., *People v. Heartbeat Int'l, Inc.* (Cal. Super. Ct., Alameda Cnty. Sept. 21, 2023)).

The State takes issue with Plaintiffs' examples of chilling effect, which concern abortion pill reversal. The State argues that "[n]either Plaintiff claims that it directly provides so-called abortion pill reversal" and that "[n]othing in Vermont law prevents Plaintiffs from distributing information about services provided elsewhere." *Id.* But the State does not explain how the provision applies to contested medical information. Plaintiffs need not plead specific examples to show a chilling risk. *See Knife Rts.*, 802 F.3d at 386. "Nor d[oes] it make a difference that the state denie[s] that the plaintiff[s] actually [are] subject to the challenged law." *Nat'l Org. for Marriage*, 714 F.3d at 690.

Finally, the State argues that advertisements must be "deliberately misleading" to violate the statute. Defs.' Mem. 6. But the text of the provision imposes an *objective* standard, prohibiting "advertising . . . *clearly designed* to mislead the public about the nature of services provided." 9 V.S.A. § 2493(a) (emphasis added);

*Cf. Richmond Boro Gun Club, Inc. v. City of New York*, 97 F.3d 681, 685–86 (2d Cir. 1996) (holding that the phrase "designed for use" denoted an objective standard). Thus, Plaintiffs have standing to challenge the Advertising Prohibition because they are subject to a credible threat of enforcement and because their speech is chilled.

### B. Plaintiffs have standing to challenge the Provider Restriction.

Plaintiffs have adequately alleged that they (1) are "limited-services pregnancy centers" within the meaning of the Provider Restriction, Compl. ¶¶ 14, 16–17, 27, 29, 45, 59, 61, 98–101, 130; (2) provide "health care services, information, and counseling" regulated by the Provider Restriction, *id.* ¶¶ 15–16, 27, 36, 38–40, 44, 47, 51, 59–60, 127–29, 140–45; and (3) face a credible threat of enforcement under the Provider Restriction, *id.* ¶¶ 126, 131, 134–36, 146–49, 151–53. This establishes standing.

The State suggests that "[t]he provider regulation does not regulate centers with no licensed health care provider volunteers or staff," like Branches. Defs.' Mem. 7. But Branches clearly fits the Provider Restriction's definition of "limited-services pregnancy center" because it "has the appearance of a medical facility." Compl. ¶¶ 45, 59, 61, 98–101. Moreover, Aspire and other NIFLA members who provide medical services are subject to the Provider Restriction. *Id.* ¶¶ 17, 38, 40.

Recognizing this, the State next argues that the Provider Restriction "does not say that health care services may only be provided by licensed health care providers personally, without delegation." Defs.' Mem. 7. In doing so, the State interprets the words "responsible for" to mean that a licensed provider need only "delegate or oversee" unlicensed providers. *Id.* at 7–8. But this interpretation is contrary to both the language and context of the Provider Restriction. At the outset, the dictionaries

6

cited by the State include alternate definitions of "responsible" that would require a licensed provider to be the primary agent "conducting and providing" the relevant "services, information, and counseling." *Responsible*, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/responsible (defining "responsible" as "liable to be called to account as the primary cause, motive, or agent"); *Responsible*, Black's Law Dictionary (11th ed. 2019) (defining "responsible" as "[h]aving caused a change, event, problem, etc.").

Further, where "key terms" in a statute are susceptible to more than one interpretation, "they must be construed 'in light of the terms surrounding [them].'" *Dubin v. United States*, 599 U.S. 110, 121 (2023) (quoting *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004)). The Provider Restriction requires that licensed providers "shall be responsible for *conducting* and *providing* health care services, information, and counseling," 9 V.S.A. § 2493(b) (emphasis added), not that they shall be responsible for supervising such activities. The most natural reading of statute is that licensed providers must *personally* conduct and provide all health care services, information, and counseling at limited-services pregnancy centers.

The second sentence of subsection (b) confirms this reading. It states that licensed providers are subject to professional discipline for failing "to conduct or to ensure that health care services, information, and counseling . . . are conducted in accordance with State law and professional standards of practice." *Id*. Under this provision, a licensed provider is subject to professional discipline if she fails to ensure

that only licensed providers conduct or provide health care services, information, or counseling as required by the prior sentence in subsection (b). *Id.*

The State's interpretation of the Provider Restriction—that it only "requires that any licensed health care provider working or volunteering at a limited-services pregnancy center ensure that health care services at the center, provided by anyone, follow State law and professional standards of practice," Defs.' Mem. 8—would render the second sentence of section (b) superfluous. This interpretation would also render the Provider Restriction redundant of the professional standards of practice. *See* 3 V.S.A. § 129a; 26 V.S.A. § 1354. As the State acknowledges, those provisions already "prohibit[] most licensed professionals from '[p]ermitting one's name or license to be used by a person, group, or corporation when not actually in charge of or responsible for the professional services provided.'" Defs.' Mem. 8 (citing 3 V.S.A. § 129a(a)(21); 26 V.S.A. § 1354(a)(24)). This Court should be "hesitant to adopt" an interpretation of the Provider Restriction that "renders superfluous" other provisions of Vermont law. *See United States v. Jircarilla Apache Nation*, 564 U.S. 162, 185–86 (2011).

Both Aspire and Branches are subject to a credible threat of enforcement under the Provider Restriction. The entities with the power to enforce the Provider Restriction—the Board of Medical Practice and the Office of Professional Regulation—also have the power to punish unlicensed practice of medicine or other health care professions. *See* 3 V.S.A. § 127; 26 V.S.A. § 1353(7). Because Branches does not currently employ any licensed provider, it faces a credible threat of enforcement. Compl. ¶¶ 53, 57–58, 151–53. And while Aspire currently employs

medical staff, its unlicensed staff "provide peer counseling, support, and well-pregnancy and parenting education." *Id.* ¶¶ 38–40.

## II.    Plaintiffs state a claim that the Act violates the Free Speech Clause.

Under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). In applying this standard, a court must "accept as true the factual allegations in the complaint and draw all reasonable inferences in plaintiff's favor." *Tanvir v. Tanzin*, 894 F.3d 449, 458 (2d Cir. 2018). In the First Amendment context, "[t]he dismissal of a claim challenging a law that abridges protected speech 'will rarely, if ever, be appropriate at the pleading stage'" because "factual development will likely be indispensable to the assessment of whether [such a law] is constitutionally permissible." *Cornelio v. Connecticut*, 32 F.4th 160, 172 (2d Cir. 2022) (quoting *Bruni v. City of Pittsburgh*, 824 F.3d 353, 357 (3d Cir. 2016)). Plaintiffs here meet that low bar.

### A. The Act discriminates against Plaintiffs based on their pro-life viewpoint and the content of their speech.

Plaintiffs have plausibly alleged that the Act constitutes unlawful viewpoint discrimination because it singles out "limited-services pregnancy centers." Compl. ¶¶ 157, 169. "Viewpoint discrimination is a subset of content discrimination in which the government impermissibly targets . . . particular views taken on [a] subject." *Ognibene v. Parkes*, 671 F.3d 174, 192 (2d Cir. 2011). "Discrimination against speech because of its message is presumed to be unconstitutional." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995). "Prohibited, too, are restrictions

9

distinguishing among different speakers, allowing speech by some but not others." *Citizens United v. FEC*, 558 U.S. 310, 340 (2010).

The "principal inquiry" in determining whether a law is viewpoint- or content-discriminatory "is whether the government has adopted a regulation of speech because of agreement or disagreement with the message it conveys." *Time Warner Cable Inc. v. F.C.C.*, 729 F.3d 137, 155 (2d Cir. 2013) (citing *Turner Broadcasting System, Inc. v. F.C.C.*, 512 U.S. 622, 642(1994)). "In making this determination," a court should "look to the purpose behind the regulation." *Clementine Co., LLC v. Adams*, 74 F.4th 77, 87 (2d Cir. 2023). Importantly, "viewpoint discrimination is scrutinized closely whether or not it occurs in the commercial speech context." *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 39 (2d Cir. 2018).

Both the Advertising Prohibition and Provider Restriction apply *only* to "limited-services pregnancy centers"—which are narrowly defined to include pro-life pregnancy centers that do not provide or refer for abortion. Compl. ¶ 100; *see also* 9 V.S.A. §§ 2492(5), 2493. A pregnancy center that offers all the same services, information, and counseling as Plaintiffs but provides or refers for abortion is exempt. That is, by definition, viewpoint discrimination.

Were that not enough, the very first sentence of the Act's legislative findings reveal that the General Assembly intended to specifically target "[c]enters that seek to counsel clients against abortion." 9 V.S.A. § 2491(a)(1); *accord* Compl. ¶ 95. Thus, Defendants are wrong that the Act applies regardless of "specific views held or communicated" by a pregnancy center. *See* Defs' Mem. 15. It would be impossible to

determine whether an advertisement is misleading or whether information or counseling relates to health care without reference to what Plaintiffs *say*.

Moreover, Plaintiffs have plausibly alleged that the Act's "[u]nderinclusiveness raises serious doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint." *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2376 (2018); *accord* Compl. ¶¶ 100, 103, 150, 164, 174. In *NIFLA*, the Supreme Court struck down a state law that required only certain pregnancy care centers—those that had the "primary purpose" of providing family planning—to post government notices. 138 S. Ct. at 2375–76.

So too here. If the legislature was concerned about nonprofit "consumer deception," Defs.' Mem. 19, it could have extended the State's consumer protection laws to include all medical clinics offering reproductive services free of charge. Instead, the law targets pro-life centers. 9 V.S.A. § 2492(5). Plaintiffs have plausibly alleged facts showing that the Act is viewpoint discriminatory.

### B. The Advertising Prohibition restricts non-commercial speech.

Plaintiffs have plausibly alleged that the Advertising Prohibition restricts their non-commercial speech because they do not charge for their services. Compl. ¶¶ 15, 27, 44, 106, 156. Indeed, the State acknowledges as much. *See* Defs.' Mem. 18–19. That should end the matter: "Commercial speech" is "speech that does no more than propose a commercial transaction." *Harris v. Quinn*, 573 U.S. 616, 648 (2014).

Yet the State relies on a single out-of-circuit case to argue that "[a]n 'economic motivation' is not limited 'to circumstances where clients pay for services.'" Defs.' Mem. 9 (quoting *First Resort, Inc. v. Herrera*, 860 F.3d 1263, 1273 (9th Cir. 2017)).

11

But the Supreme Court has held that even "the solicitation of charitable contributions is protected speech." *Riley v. Nat. Fed. of the Blind of N.C., Inc.*, 487 U.S. 781, 789 (1988). And more recently, it declined to apply the commercial speech doctrine to a law regulating pregnancy centers in *NIFLA*. 138 S. Ct. at 2372.

More importantly, *First Resort* directly conflicts with Second Circuit case law. In *Transportation Alternatives, Inc. v. City of New York*, the Second Circuit considered a city ordinance requiring a special fee for events with commercial sponsorship. 340 F.3d 72, 75–76 (2d Cir. 2003). The non-profit plaintiff there wished to host "the New York City Century Bike Tour" as "a fundraiser and an opportunity for advocacy." *Id.* at 76. Despite the organization's fundraising purposes, the Second Circuit held that "[t]he commercial elements of the Bike Tour [we]re relatively trivial" and "this speech was a far distance from commercial speech undertaken to solicit a commercial transaction." *Id.* at 78. Under *Transportation Alternatives*, that Plaintiffs advertisements may indirectly impact fundraising (to, in turn, provide free services) does not render those advertisements commercial speech.

The Supreme Court has recognized that a permissible prohibition on false or misleading *commercial* speech would be an impermissible content-based regulation as applied to *non-commercial* speech. *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557, 563–64 & n.6 (1980). And the Court "has stressed the danger of content-based regulations in the fields of medicine and public health, where information can save lives." *NIFLA*, 138 S. Ct. at 2374 (cleaned up). This concern is especially salient where a law is "clearly aimed at influencing the supply

12

of information, a core First Amendment concern," due to fear that the information may be "biased." *See IMS Health Inc. v. Sorrell*, 630 F.3d 263, 272, 277 (2d Cir. 2010).

Plaintiffs have plausibly alleged both that the Advertising Prohibition restricts their non-commercial speech and that it is an impermissible content-based regulation even as to commercial speech.

### C. The Provider Restriction regulates professional speech.

Plaintiffs have plausibly alleged that the Provider Restriction regulates "pure speech because it directly regulates speech about health-care-related 'information' and 'counseling' by 'limited services pregnancy centers,' even when no medical treatment or procedure is involved." Compl. ¶ 169 (citing 9 V.S.A. § 2493(b)); *see also* Compl. ¶¶ 14, 29, 45, 53 (stating that Plaintiffs do not provide or refer for abortion). The Supreme Court held in *NIFLA* that "[s]peech is not unprotected merely because it is uttered by 'professionals.'" 138 S. Ct. at 2371–72. And while drawing the speech/conduct line can be difficult, the Court emphasized that "a State may not, under the guise of prohibiting professional misconduct, ignore constitutional rights." *Id.* at 2373 (quoting *NAACP v. Button*, 371 U.S. 415, 439 (1963)).

The State argues that the Provider Restriction is a "state licensing regulation." Defs.' Mem. 11–12. But licensing requirements do not give the State "unfettered power to reduce a group's First Amendment rights." *Brokamp v. James*, 66 F.4th 374, 391 (2d Cir. 2023) (quoting *NIFLA*, 138 S. Ct. at 2375). While a State may "decide that particular functions may be performed only by licensed professionals," *Mazurek v. Armstrong*, 520 U.S. 968, 973 (1997), a licensing requirement "directed narrowly and specifically at expression or conduct commonly associated with expression" is an

13

impermissible "prior restraint" if it is "based on the content or viewpoint of the speech." *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 760 (1988).

The cases cited by the State do not hold otherwise. *See* Defs.' Mem. 11–12. Indeed, those cases explicitly recognize that "[t]he Supreme Court has made clear that if regulations impose content-based restrictions on speech, strict scrutiny or intermediate scrutiny may be applied, depending on whether the affected speech was commercial speech." *Gray v. Dep't of Pub. Safety*, 248 A.3d 212, 219–20 (Me. 2021) (emphasis omitted). There, the Maine Supreme Judicial Court upheld a licensing law that "require[ed] good character and competency in investigating matters" because it "d[id] not on [its] face prohibit or constrain speech." *Id.* at 221. Similarly, the Fourth Circuit upheld a North Carolina "ban on the *practice* of law" because it did not "target the communicative aspects of practicing law, such as the advice lawyers may give to clients." *Capital Assoc. Indus., Inc. v. Stein*, 922 F.3d 198, 207–08 (4th Cir. 2019) (emphasis added). Although the Eleventh Circuit upheld a Florida law regulating "nutrition counseling," it did so only because "counseling" was defined narrowly to include only speech incidental to "conducting nutrition research, developing a nutrition care system, and integrating information from a nutrition assessment are not speech." *Del Castillo v. Sec'y, Fla. Dep't of Health*, 26 F.4th 1214, 1225–26 (11th Cir. 2022). And while the Supreme Court held that a lawyer's in-person solicitation of clients for pecuniary gain constituted *commercial* speech, *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 437, 449, 455–59 (1978), not all "professional speech" is "commercial speech," *see Bd. of Trs. v. Fox*, 492 U.S. 469, 482 (1989).

In contrast, the Provider Restriction facially regulates not only who may perform "health care services," but also who may provide health care "information" and "counseling." 9 V.S.A. § 2493(b). The Restriction broadly defines "health information" as "any oral or written information in any form or medium that relates to . . . the past, present or future physical or mental health or condition of a client." Compl. ¶ 128 (quoting 9 V.S.A. § 2492(4)). It applies "regardless of whether a medical procedure is ever sought, offered, or performed." *See NIFLA,* 138 S. Ct. at 2373. And unlike the Florida law in *Del Castillo,* it does not narrow counseling to speech incidental to a medical procedure.

### D. The Act fails heightened scrutiny.

Content-based restrictions on speech "can stand only if they survive strict scrutiny, which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 171 (2015) (cleaned up). But Vermont's Unfair and Deceptive Act cannot survive even intermediate scrutiny. Compl. ¶¶ 159–65, 172–75.

Under intermediate scrutiny, "it is defendants' burden to demonstrate that the requirement . . . (1) advances important governmental interests unrelated to the suppression of free speech, and (2) does not burden substantially more speech than necessary to further those interests." *Brokamp,* 66 F.4th at 397. The State argues that the Act advances its interests "in ensuring that (1) consumers are protected against unfair and deceptive business practices, including false advertising, and (2) where a licensed provider is involved, patients can trust that health care services,

information, and counseling is provided in accordance with State law and professional standards of practice." Defs.' Mem. 16.

1. A state cannot leverage its interest in protecting consumers against unfair and deceptive business practices to target speech based on its viewpoint. The only Second Circuit case that the State cites in support of its "strong interest," *id.* at 18, applies the "more lenient review" applicable to "[r]egulations that compel 'purely factual and uncontroversial' commercial speech," *Nat'l Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104, 113 (2d Cir. 2001) (quoting *Zauderer v. Off. of Disciplinary Couns.*, 471 U.S. 626, 650 (1985)), not the heightened scrutiny appropriate to viewpoint discriminatory regulations of "abortion, anything but an 'uncontroversial' topic," *NIFLA*, 138 S. Ct. at 2372. Similarly, the Ninth Circuit found that a California advertising statute was viewpoint neutral. *Ass'n of Nat'l Advertisers v. Lungren*, 44 F.3d 726, 729 (9th Cir. 1994). The District of Minnesota did not even mention viewpoint discrimination in *1-800-411-Pain Referral Service, LLC v. Tollefson*, 915 F. Supp. 2d 1032 (D. Minn. 2012). And again, *First Resort* is inconsistent with Second Circuit case law. *See supra* Part II.A n.1, II.B.

Regardless, the Advertising provision is "not sufficiently drawn to achieve" any State interest because it "unduly burdens protected speech." *NIFLA*, 138 S. Ct. at 2375, 2377. If Vermont's goal is to "protect[] consumers from deceptive and misleading advertising," Defs.' Mem. 18, then the Advertising Prohibition is "wildly underinclusive," *NIFLA*, 138 S. Ct. at 2375. The General Assembly could have extended its existing consumer protection laws to cover *all* entities that provide free

16

goods and services, regardless of whether those entities have the primary purpose of providing services to pregnant women, have the appearance of a medical facility, or provide or refer for abortion, *see NIFLA*, 138 S. Ct. at 2375–76.

The advertising prohibition is also overinclusive. If Vermont's goal is to "ensur[e] that the choice to have or terminate a pregnancy is 'well-informed,'" Defs.' Mem. 18, it could have enacted a narrow informed-consent law applicable to prenatal care, delivery, and abortion, *see NIFLA*, 138 S. Ct. at 2373–74. Or Vermont "could inform [pregnant] women about [abortion] services without burdening a speaker with unwanted speech." *Id.* at 2376; *see also Evergreen Ass'n, Inc. v. City of New York*, 740 F.3d 233, 249 (2d Cir. 2014) (requiring pregnancy centers to disclose whether they provide abortion "overly burdens [the centers'] speech"). It could accomplish this goal through "a public-information campaign" or by "post[ing] the information on public property near . . . pregnancy centers." *NIFLA*, 138 S. Ct. at 2376. Because the Advertising Prohibition is not sufficiently drawn to achieve any important state interest, it fails intermediate scrutiny.

2.    Likewise, the Provider Restriction cannot survive intermediate scrutiny. Even assuming the State has important interests in ensuring that women are fully informed of their reproductive health care options and "in protecting the legitimacy of its licensed professions," Defs.' Mem. 19–20, the Provider Restriction is not sufficiently drawn to achieve those interests. Like the Advertising Prohibition, the Provider Restriction "covers a curiously narrow subset of speakers." *NIFLA*, 138 S. Ct. at 2377. The State explains that the Provider Restriction is intended to "extend

its licensing power to the extent possible to curb patient harms perpetrated by unlicensed providers," Defs.' Mem. 21—the very same unlicensed providers that the State elsewhere claims are unregulated by the Provider Restriction, *id.* at 7. Even if the State seeks to accomplish this goal by "holding health care providers responsible for ensuring that their co-workers don't do anything the professional couldn't do," *id.* at 21, it could have enacted a neutral regulation extending that duty to licensed providers at abortion clinics or pregnancy centers that refer for abortion as well, *see* Compl. ¶ 150. This underinclusiveness, as well as the statute's legislative findings and intent, demonstrate that the government's interest is in suppressing speech based on its viewpoint, not holding unlicensed professionals to certain standards. *See NIFLA*, 138 S. Ct. at 2376.

Moreover, the Provider Restriction unduly burdens more speech than necessary. "Health information" is defined broadly to include "any oral or written information in any form or medium that relates to . . . the past, present, or future physical or mental health condition of a client." 9 V.S.A. § 2492(4). And "counseling" is not defined at all. But the provision of factual information (even contested factual information) about pregnancy, childbirth, and abortion is critical to a pregnancy center's ability to counsel women to choose life. Compl. ¶¶ 13, 26, 43, 80, 91–92, 116, 146–49, 151–52. To the extent the Provider Restriction limits pregnancy centers' ability to provide such information (with or without a licensed provider), it interferes with Plaintiffs' pro-life mission. *Id.* "If there is any fixed star in our constitutional constellation, . . . it is the principle that the government may not interfere with an

uninhibited marketplace of ideas." *303 Creative LLC v. Elenis*, 600 U. S. 570, 584–85 (2023) (cleaned up). Because the Provider Restriction is not narrowly drawn to achieve an important government interest unrelated to the suppression of free speech, it fails intermediate scrutiny.

### III.  Plaintiffs have stated a claim that SB 37 is unconstitutionally vague.

Plaintiffs have adequately pled both facial and as-applied vagueness claims. Compl. ¶¶ 176–87. "Among the most fundamental protections of due process is the principle that [everyone is] entitled to be informed as to what the State commands or forbids." *Cunney v. Bd. of Trs. of Vill. of Grand View*, *N.Y.*, 660 F.3d 612, 620 (2d Cir. 2011) (cleaned up). "Vagueness review is heightened when . . . a challenged statute pertains to speech protected by the First Amendment." *Brokamp*, 66 F.4th at 403.

Under Supreme Court and Second Circuit precedent, "[a] statute is unconstitutionally vague in violation of the Due Process Clause if it (1) 'fails to provide a person of ordinary intelligence with fair notice of what is prohibited,' or (2) 'is so standardless that it authorizes or encourages seriously discriminatory enforcement.'" *Id.* at 403 (quoting *Holder v. Humanitarian L. Project*, 561 U.S. 1, 18 (2010)). Plaintiffs properly pled both facial and as-applied pre-enforcement challenges. *See id.* at 387–88; *Copeland v. Vance*, 893 F.3d 101, 111 (2d Cir. 2018).

A "prospective as-applied" vagueness challenge "seeks to prove that a statute cannot constitutionally be applied to a specific course of conduct that the challenger intends to follow." *Copeland*, 893 F.3d at 112. But "a challenger may raise a facial challenge if the statute implicates rights protected by the First Amendment, even if the statute is not vague as applied to that challenger's conduct." *United States v.*

*Requena*, 980 F.3d 30, 39 (2d Cir. 2020). While a plaintiff must normally show that a statute is vague in all its applications to succeed on a facial vagueness challenge, this "general rule disfavoring facial vagueness challenges does not apply in the First Amendment context." *Farrell*, 449 F.3d at 496.

Where a challenged statute "raises serious First Amendment concerns" and there are "colorable arguments from both parties" as to its meaning, a court should not "dismiss Plaintiff's facial vagueness claim." *Brooklyn Branch of NAACP v. Kosinski*, No. 21 CIV. 7667 (KPF), 2023 WL 2185901, at *18–19 (S.D.N.Y. Feb. 23, 2023). "'[A] more fulsome analysis of the language and legislative history of the statute [may be] necessary' to determine whether the law provides adequate notice of its reach or contains any meaningful limiting principle in light of its evolution over time and tools of statutory construction." *Id.* (quoting *Muchmore's Café, LLC v. City of New York*, No. 14-cv-5668, 2016 WL 11469539, at *17 (E.D.N.Y. Sept. 29, 2016)).

## A. The Advertising Prohibition is unconstitutionally vague.

Plaintiffs have plausibly alleged that the Advertising Prohibition is subject to more than one "valid approach[] to statutory interpretation." *See id.* at *18; *see also* Compl. ¶¶ 105, 111–12, 117, 176–81. The Advertising Prohibition fails to define or limit "mislead." Compl. ¶¶ 105, 180. It does not include a scienter requirement nor require materiality. The State relies on an out-of-state case defining "mislead" as "to guide wrongly." Defs.' Mem. 23 (quoting *People v. Witzerman*, 29 Cal. App. 3d 169, 179–80 (Cal. Ct. App. 1972)). But that case did not involve a free speech challenge. And where a statute is "capable of reaching expression sheltered by the First

Amendment, vagueness doctrine [] demand[s] a greater degree of specificity than in other contexts." *Melendez v. City of New York*, 16 F.4th 992, 1015 (2d Cir. 2021).

Similarly, the other out-of-state and out-of-circuit cases cited by the State were decided on non-speech grounds and did not address the heightened review applicable to First Amendment challenges. *See Ark. Hearing Instrument Dispenser Bd. v. Vance*, 197 S.W.3d 495, 333 (Ark. 2004) ("[T]his is a statute that regulates business conduct and not a fundamental right and, as such, is held to a more forgiving standard in constitutional challenges."); *State v. Ralph Williams' Nw. Chrysler Plymouth*, 553 P.2d 423, 437 (Wash. 1976) (rejecting vagueness challenge without mentioning speech); *Carpets by Carload, Inc. v. Warren*, 368 F. Supp. 1075, 1078 (E.D. Wis. 1973) (relying on the now-outdated notion that "commercial advertising is not protected by the freedom of speech and press provisions of the first amendment").

More recently, federal courts have struck down laws prohibiting misleading political advertisements as unconstitutionally vague. For example, in *Winter v. Wolnitzek*, a federal district court struck down a judicial conduct statute, explaining that "even reasonable people can disagree about what constitutes a 'misleading' statement." 186 F. Supp. 3d 673, 700 (E.D. Ky. 2016), *aff'd on other grounds*, 834 F.3d 681, 694, 696 (6th Cir. 2016). Similarly, another federal district court struck down Nevada's judicial conduct statute "because a judicial candidate cannot objectively ascertain what additional facts must be included to avoid a 'materially misleading statement.'" *Kishner v. Nev. Standing Comm. on Jud. Ethics & Election Pracs.*, No. 2:10-cv-01858, 2010 WL 4365951, at *6 (D. Nev. Oct. 28, 2010).

Here, because the Advertising Provision fails to define relevant terms and is subject to multiple valid interpretations, a "more fulsome analysis of [its] language and legislative history . . . is necessary" to determine whether it is unconstitutionally vague. *Brooklyn Branch*, 2023 WL 2185901, at *19.

**B. The Provider Restriction is unconstitutionally vague.**

Plaintiffs have plausibly alleged that the Provider Restriction fails to define relevant terms and is subject to more than one "valid" interpretation. *Kosinski*, 2023 WL 2185901, at *18; *see also* Compl. ¶¶ 127–29, 140–45, 182–87.

First, the Provider Restriction does not define "health *care* information," although the Act does define "health information" as "any oral or written information in any form or medium that relates to health insurance or the past, present, or future physical or mental health or condition of a client." *Id*. ¶ 128 (quoting 9 V.S.A. § 2492(4)). Even if this definition applies to the Provider Restriction (an issue that the State does not address), that definition is vague and overbroad.

Indeed, the definition of "health information" is so broad as to include a brochure explaining a biblical view of fetal personhood because it relates to a client's pregnancy—a physical health condition. *See* Compl. ¶¶ 142, 147. "Without an adequate definition" of health care information, the Provider Restriction "presents a risk of arbitrary and discriminatory enforcement" by Vermont state officials who dislike the information that pregnancy centers provide. *See Montagno v. City of Burlington*, No. 2:16-cv-232, 2017 WL 2399456, at *18 (D. Vt. June 1, 2017); *Thibodeau v. Portuondo*, 486 F.3d 61, 65–66 (2d Cir. 2007) (same). This risk of

discriminatory enforcement is heightened here because the provider restriction applies only to pro-life pregnancy centers. *See supra* Part II.A.

Second, the Provider Restriction does not define health care "counseling," Compl. ¶ 129, and the State failed to offer any construction in its memorandum. Absent a definition, it is impossible for Plaintiffs to determine "whether 'counseling' is meant to apply narrowly to informed consent or mental health counseling or broadly to any person at a pregnancy center who might talk with a woman about whether to have an abortion, or counsel her concerning pregnancy, pregnancy prevention, parenting, or childbirth." *Id.* ¶ 144.

Third, the term "health care services" is not defined for purposes of the Act. *Id.* ¶ 127. SB 37 elsewhere defines "health care services" as "services for the diagnosis, prevention, treatment, cure, or relief of a physical or mental health condition, including procedures, products, devices, and medications." *Id.* (quoting 3 V.S.A. § 129a(f)(2)(B); 26 V.S.A. § 1354(d)(2)(B)). Even assuming this definition applies to the Provider Restriction, it is vague and overbroad. Even an over-the-counter pregnancy test might be considered a health care service because it is used to diagnose pregnancy, a physical health condition. Compl. ¶ 140. The State appears to disclaim this interpretation, Defs' Mem. 8–9, arguing that "health care services" is limited by "the scope of services regulated by a health care professional's standards," *id.* at 25. But that statute provides the same broad definition of "health care services" cited above. *See* 26 V.S.A. § 1354(d)(2)(B).

The State next attempts to rely on *Kelley v. Apria Healthcare, LLC*, 232 F. Supp. 3d 983, 992 (E.D. Tenn. 2017), Defs.' Mem. 25, but that case did not involve a vagueness challenge. Instead, the court merely held that the defendant—a manufacturer of medical equipment—did not provide health care services because it provided *no* services directly to patients. *Kelley*, 232 F. Supp. 3d at 992.

The State's remaining arguments do not cure the Provider Restriction's vagueness. The State argues that the Act "is not subject to arbitrary enforcement because it is part of the Consumer Protection Act, which requires an 'objective probable cause standard' for any investigations by the Attorney General." Defs.' Mem. 25 (citing *Diamond v. Vickrey*, 367 A.2d 668 (Vt. 1976)). But the Provider Restriction is enforced under Vermont's statutes governing unprofessional conduct, not its Consumer Protection Act. 9 V.S.A. § 2493(b); Compl. ¶¶ 131–35. Regardless, while a "scienter requirement[]" may "alleviate vagueness concerns," *Gonzales v. Carhart*, 440 U.S. 124, 149 (2007), an "objective probable cause standard" is not a scienter requirement, *see Ruan v. United States*, 142 S. Ct. 2370, 2377, 2381 (2022).

The State further argues that licensing actions under the Provider Restriction are limited to violations of statutory professional standards. Defs.' Mem. 25. But that narrow interpretation would render the Provider Restriction duplicative of Vermont's other professional licensing laws. The plain language of the Provider Restriction adds a *new* legal basis for a finding of unprofessional conduct by holding licensed health care providers responsible for "ensuring that their co-workers don't do anything the professional couldn't do." *Compare* Defs.' Mem. 21 *with In re Porter*, 70 A.3d 915, 921–

24

22 (Vt. 2012). Because the Provider Restriction fails to define relevant terms, is susceptible to more than one valid interpretation, and has no limiting principle, Plaintiffs have adequately alleged that it is unconstitutionally vague.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully urge this Court to deny the State's motion to dismiss.

Respectfully submitted this 25th day of October, 2023.

Julia C. Payne*
ALLIANCE DEFENDING FREEDOM
15100 North 90th Street
Scottsdale, Arizona 85260
Telephone: (480) 444-0020
Facsimile: (480) 444-0028
jpayne@ADFlegal.org

*/s/ Michael Tierney*
Michael Tierney
Gretchen M. Wade
WADLEIGH, STAR & PETERS, P.L.L.C.
95 Market Street
Manchester, NH 03101
Telephone: (603) 669-4140
Facsimile: (603) 669-6018
mtierney@wadleighlaw.com
gwade@wadleighlaw.com

*Counsel for Plaintiffs*
*Admitted pro hac vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 25, 2023, I electronically filed the foregoing on the Court's CM/ECF system, which automatically sends an electronic notification with this filing to all attorneys of record.

*/s/ Michael Tierney*
Michael Tierney