**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT**

**NATIONAL INSTITUTE OF FAMILY
AND LIFE ADVOCATES; ASPIRE
TOGETHER, INC., d/b/a ASPIRE
NOW; BRANCHES PREGNANCY
RESOURCE CENTER, INC.,**

        *Plaintiffs,*

    v.

**CHARITY CLARK**, in her official
capacity as Attorney General of the State
of Vermont; **SARAH COPELAND
HANZAS**, in her official capacity as
Secretary of the State of Vermont;
**KEVIN RUSHING**, in his official
capacity as Director of the Office of
Professional Regulation; **MARK
LEVINE**, in his official capacity as the
Commissioner of Health of the State of
Vermont; **The Individual Members of
the VERMONT BOARD OF
MEDICAL PRACTICE**, in their official
capacities; **The Individual Members of
the VERMONT STATE BOARD OF
NURSING**, in their official capacities;
and **COURTNEY BOWERS**, in her
official capacity as Naturopathic
Physician Advisor,

        *Defendants.*

**PLAINTIFFS' RESPONSE IN
OPPOSITION TO DEFENDANTS'
AMENDED MOTION TO DISMISS**


**Case No. 2:23-cv-00229-wks**

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 1

ARGUMENT ......................................................................................................... 3

I.     This Court has subject-matter jurisdiction over Plaintiffs' challenge. ............. 3

    A.     Plaintiffs have standing to challenge the Advertising Prohibition. ....... 4

    B.     Plaintiffs have standing to challenge the Provider Restriction. ........... 7

II.    Plaintiffs state a claim that the Act violates the Free Speech Clause. .......... 10

    A.     The Act discriminates against Plaintiffs based on their pro-life
        viewpoint and the content of their speech. ........................................... 10

    B.     The Advertising Prohibition restricts non-commercial speech. .......... 12

    C.     The Provider Restriction regulates professional (and unprofessional)
        speech. ................................................................................................ 13

    D.     The Act fails heightened scrutiny. ....................................................... 15

III.   Plaintiffs state a claim that the Act is unconstitutionally vague. ................. 19

    A.     The Advertising Prohibition is unconstitutionally vague. ................... 20

    B.     The Provider Restriction is unconstitutionally vague. ........................ 22

CONCLUSION ................................................................................................... 25

CERTIFICATE OF SERVICE ............................................................................ 26

## INTRODUCTION

Vermont's "Unfair and Deceptive Act" explicitly targets the speech of pro-life pregnancy centers by imposing vague, content- and viewpoint-discriminatory restrictions on their ability to advertise and to provide information, counseling, and other services. Despite promising voters that she would use consumer protection laws to target pregnancy centers, the Vermont Attorney General now wrongly claims these centers face no credible threat of enforcement. Moreover, Plaintiffs have stated a valid claim that the law regulates their non-commercial speech in a way that is discriminates based on content and viewpoint and is unconstitutionally vague. Because Plaintiffs have alleged facts that plausibly suggest they have standing to sue, and because they have stated a claim under the First and Fourteenth Amendments, this Court should protect the right of pregnancy centers to serve women in need without fear of unconstitutional government punishment.

## STATEMENT OF FACTS

A central tenet of Attorney General Charity Clark's campaign platform was "us[ing] the Consumer Protection Act to create a safe harbor for people seeking abortion care" by "institut[ing] a no-tolerance policy on deception and misinformation" from pro-life pregnancy centers. Ex. 1, VPIRG Votes Endorsement 3. Once in office, Attorney General Clark kept that promise by supporting the passage of SB 37 ("the Act"), which targets pro-life pregnancy centers. Ex. 2, Written Testimony Regarding S. 37. Certain provisions apply only to "limited-services pregnancy centers," which the bill defines as a center that "does not directly provide,

1

or provide referrals to clients for, abortions or emergency contraception." ECF No. 47, Am. Compl. ¶¶ 100–01 (quoting 9 V.S.A. § 2492(5)). The bill also allocates broad enforcement authority to the Attorney General herself. 9 V.S.A. § 2493(c).

Plaintiffs are pro-life pregnancy centers that aim to empower women to choose life-affirming alternatives to abortion through counseling, education, and material support. Am. Compl. ¶¶ 13, 26, 43. Plaintiffs filed suit challenging the two portions of the Act: the Advertising Prohibition and the Provider Restriction. The Advertising Prohibition explicitly targets pro-life pregnancy centers, prohibiting only those centers from "disseminat[ing] or caus[ing] to be disseminated to the public any advertising about the services or proposed services performed at that center that is untrue or clearly designed to mislead the public about the nature of services provided." *Id.* ¶ 102 (quoting 9 V.S.A. § 2493(a)). The Provider Restriction targets pro-life pregnancy centers by requiring that their licensed staff and volunteers "shall be responsible for conducting and providing health care services, information, and counseling at the center." *Id.* ¶ 137 (quoting 9 V.S.A. § 2493(b)).

The State moved to dismiss the original complaint, arguing that Plaintiffs lacked standing and failed to state a claim for relief. ECF No. 39, Defs.' Mot. to Dismiss 1. In response, Plaintiffs filed an amended complaint. ECF No. 42, Mot. to Am. Compl. & Exs. 1–2. Around the same time, Attorney General Clark along with fifteen other attorneys general joined a letter accusing pregnancy centers of "misleading consumers" and using "deceptive tactics to lure in patients." Ex. 3, Open Letter from Attorneys General Regarding CPC Misinformation and Harm 1. That

letter specifically cited the authority of attorneys general to "enforce[e] our jurisdictions' consumer protection laws." *Id.* Yet the State again moved to dismiss, arguing that pregnancy centers did not have standing to challenge the Act and that they failed to state a claim. ECF No. 49, Defs.' Am. Mot. 1. Plaintiffs respectfully urge this Court to deny that motion.

**ARGUMENT**

**I.    This Court has subject-matter jurisdiction over Plaintiffs' challenge.**

Plaintiffs allege "facts that . . . plausibly suggest that [they have] standing to sue." *Carter v. Health Port Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (cleaned up). In "resolv[ing] issues of jurisdictional fact," a court may "refer[] to evidence outside the pleadings." *Pyskaty v. Wide World of Cars, LLC*, 866 F.3d 216, 223 (2d Cir. 2017).

Under the First Amendment, standing exists when a "law is aimed directly at plaintiffs, who, if their interpretation of the statute is correct, will have to take significant and costly compliance measures or risk" punishment. *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392 (1988); *United States v. Smith*, 945 F.3d 729, 737 (2d Cir. 2019). A plaintiff "need not demonstrate to a certainty that it will be prosecuted under the statute to show injury, but only that it has an actual and well-founded fear that the law will be enforced against it." *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 689 (2d Cir. 2013). And it makes no "difference [if] the state denie[s] that the plaintiff actually [i]s subject to the challenged law." *Id.* at 690.

Where "a statute is challenged for unconstitutional vagueness," a plaintiff need not "plead[] the specific statements they intend[] to make . . . to support their professed fear of future prosecution" to establish standing. *Knife Rts., Inc. v. Vance*,

3

802 F.3d 377, 386 n.5 (2d Cir. 2015). Instead, "a plaintiff seeking to bring a vagueness challenge need show only the risk of chilling, not an actual chilling effect." *Farrell v. Burke*, 449 F.3d 470, 498 (2d Cir. 2006).

### A. Plaintiffs have standing to challenge the Advertising Prohibition.

Plaintiffs have adequately alleged that they (1) are limited-services pregnancy centers, Am. Compl. ¶¶ 14, 16, 27, 29, 45, 59, 61, 98–101, 110; (2) provide information about their services using means regulated by the Advertising Prohibition, *id.* ¶¶ 18, 30–32, 46, 104; (3) face a credible threat of enforcement against their current advertisements under the Advertising Prohibition, *id.* ¶¶ 35–36, 47, 50–51, 96, 105, 107, 109, 111–23, 133–34; and (4) are chilled from disseminating new advertisements, *id.* ¶¶ 124–32. This establishes standing twice over. Plaintiffs possess standing based on a credible threat of enforcement *and* because their speech is chilled.

The State does not deny that Plaintiffs are limited-services pregnancy centers who disseminate information regulated by the Advertising Prohibition. *See id.* ¶ 110. Thus, Plaintiffs "own conduct falls within the ambit of" that provision. *See Smith*, 945 F.3d at 737. The State argues that advertisements must be "deliberately misleading" to violate the statute. Defs.' Am. Mot. to Dismiss 7. But the statute does not use the word "deliberately." It imposes an *objective* standard by prohibiting "advertising . . . *clearly designed* to mislead the public about the nature of services provided." 9 V.S.A. § 2493(a) (emphasis added); *cf. Richmond Boro Gun Club, Inc. v. City of New York*, 97 F.3d 681, 685–86 (2d Cir. 1996) (holding that "designed for use" is an objective standard). Even though Plaintiffs believe their advertisements are true and accurate,

4

they are subject to a credible threat of enforcement if the Attorney General believes they are objectively misleading.

The Attorney General's recent statements about pregnancy centers demonstrate that she *does* believe the pregnancy centers' advertisements are misleading. *See supra* Statement of Facts. In an open letter, the Vermont Attorney General and 15 other attorneys general provided a list of so-called "deceptive tactics" supposedly used by pregnancy centers. Ex. 3 at 3. First, they accused pregnancy centers of using search engine optimization to "target women" by "ensuring that when someone types 'abortion clinic' into . . . Google[], they get results for [pregnancy centers]." *Id.* Aspire uses search engine optimization terms "abortion" and "clinic," and while some ads expressly disclose that it does not provide abortions, others do not. Am. Compl. ¶¶ 117–119 & Ex. C.

The State argues that "[b]ecause the statements [in Plaintiffs' Google ads] are true and accurate, they do not create a credible threat of prosecution." Defs.' Am. Mot. 7 (citing Am. Compl. ¶¶ 119, 120, 122). This disclaimer contradicts the Attorney General's letter, which characterizes such tactics as "false advertising." Ex. 3 at 4. The State also claims that "[t]he advertising provision does not impose any affirmative, blanket disclosure requirements." Defs.' Am. Mot. 8. But it does not state that such a disclosure is *never* required; nor does it clarify whether such a disclosure is a defense to liability under the Advertising Prohibition. Am. Compl. ¶ 112.

Curiously, the State does not make the same argument as to Plaintiffs' websites and brochures, *id.* ¶¶ 116, 117, 120, even though one legislator has already

5

accused Aspire of misleading potential clients to believe it offers abortions by advertising "abortion information" on its website, *id.* ¶ 116. The Attorney General's letter also accuses pregnancy centers of "provid[ing] 'misleading information' connecting abortions to . . . infertility . . . and mental illness" such as "post-abortion syndrome" and "misleading information regarding contraception, including falsely claiming that birth control is an 'abortifacient.'" Ex. 3 at 4. Both Aspire and Branches include such information on their websites and brochures. Am. Compl. ¶¶ 32, 33, 36, 47, 48, 51, 120–21; Ex. 4, "Abortion: Procedures, Risks, Side-Effects" Brochure 1–2 (listing "infertility" and "post-abortion syndrome" as possible risks of abortion); Ex. 5, "With Loving Care" Brochure 2 (listing signs of post-abortion syndrome); Ex. 6, "Abortion" Webpage 2 (listing depression and anxiety as possible complications of surgical abortions); Ex. 7, "The Morning-After Pill" Brochure 5 (explaining that "emergency contraception" causes "an abortion [to] occur").

The Branches webpage specifically invites readers to "[c]ontact us to learn more about abortion procedures," Ex. 6 at 2, and the Aspire brochure invites clients to "call the number on the back of this brochure" "[i]f you would like to talk with someone who cares about you," Ex. 5 at 1. Under the State's theory, none of these statements would count as advertisements because Plaintiffs do not themselves provide abortions or contraception. Defs.' Am. Mot. 8. That theory is inconsistent with the AG's claim that such information is misleading, Ex. 3 at 4, and the legislature's objective of preventing pregnancy centers from "promot[ing] patently false or biased medical claims about abortion," 9 V.S.A. § 2491(a)(2).

The State also takes issue with Plaintiffs' examples of chilling effect, which concern abortion pill reversal. Am. Compl. ¶¶ 127–34. The State argues that "[n]either Plaintiff claims that it directly provides so-called abortion pill reversal" and that "[n]othing in Vermont law prevents Plaintiffs from distributing information about services provided elsewhere." Defs.' Am. Mot. 7–8. But the State does not explain how the provision applies to contested medical information or address whether referrals for APR might qualify as a service. *See* Am. Compl. ¶¶ 111, 129, 131, 133. Regardless, Plaintiffs need not plead specific examples to show a chilling risk. *See Knife Rts.*, 802 F.3d at 386. "Nor d[oes] it make a difference that the state denie[s] that the plaintiff[s] actually [are] subject to the challenged law." *Nat'l Org. for Marriage*, 714 F.3d at 690.

## B. Plaintiffs have standing to challenge the Provider Restriction.

Plaintiffs have adequately alleged that they (1) are "limited-services pregnancy centers" within the meaning of the Provider Restriction, Am. Compl. ¶¶ 14, 16, 27, 29, 45, 59, 61, 98–101, 110, 146; (2) provide "health care services, information, and counseling" regulated by the Provider Restriction, *id.* ¶¶ 15–16, 27, 36, 38–40, 44, 47, 51, 59–60; and (3) face a credible threat of enforcement under the Provider Restriction, *id.* ¶¶ 161–64, 168. This establishes standing.

The State suggests that "[t]he provider regulation does not regulate centers with no licensed health care provider volunteers or staff," like Branches. Defs.' Am. Mot. 9. But Branches clearly fits the Provider Restriction's broad definition of "limited-services pregnancy center" because it "offers pregnancy testing" and "collect[s] health information from clients." Am. Compl. ¶¶ 45, 59, 61, 98–101.

Moreover, Aspire and other NIFLA members who *do* have licensed medical staff are undoubtedly subject to the Provider Restriction. *Id.* ¶¶ 17, 38, 40.

Recognizing this, the State next argues that the Provider Restriction "does not say that health care services may only be provided by licensed health care providers personally, without delegation." Defs.' Am. Mot. 9. In doing so, the State interprets the words "responsible for" to mean that a licensed provider need only "delegate or oversee" unlicensed providers. *Id.* But this interpretation is contrary to both the language and context of the Provider Restriction. The dictionaries cited by the State include alternate definitions of "responsible" that would require a licensed provider to be the primary agent "conducting and providing" the relevant "services, information, and counseling." *Responsible*, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/responsible (defining "responsible" as "liable to be called to account as the primary cause, motive, or agent"); *Responsible*, Black's Law Dictionary (11th ed. 2019) (defining "responsible" as "[h]aving caused a change, event, problem, etc.").

Further, where "key terms" in a statute are susceptible to more than one interpretation, "they must be construed in light of the terms surrounding them." *Dubin v. United States*, 599 U.S. 110, 121 (2023) (cleaned up). The Provider Restriction requires that licensed providers "shall be responsible for *conducting* and *providing* health care services, information, and counseling," 9 V.S.A. § 2493(b) (emphasis added), not that they shall be responsible for supervising such activities. That reading of the statute would mean that licensed providers *personally* conduct

8

and provide all health care services, information, and counseling at limited-services pregnancy centers but not at Planned Parenthood.

The second sentence of subsection (b) confirms this reading. It states that licensed providers are subject to professional discipline for failing "to conduct or to ensure that health care services, information, and counseling . . . are conducted in accordance with State law and professional standards of practice." *Id.* The State argues this only requires licensed health care providers to "ensure that health care services at the center, provided by anyone, follow State law and professional standards of practice." Defs.' Am. Mot. 10. These standards do not apply to Planned Parenthood's non-medical staff. And many would be nonsensical when applied to anyone other than a licensed provider. For instance, it makes no sense to hold a licensed provider responsible for an unlicensed volunteer's failure to report a "change of name, e-mail, or mailing address" to the Office of Professional Regulation when the volunteer has no obligation to do so. 3 V.S.A. § 129a(14). A more plausible reading would subject a licensed provider to discipline if she fails to ensure that only *licensed* providers conduct or provide health care services, information, or counseling.

Even if the State's interpretation is correct, Aspire's licensed providers are subject to a credible threat of enforcement if one of Aspire's staff members or volunteers does "anything the professional couldn't do," Defs.' Am. Mot. 23, regardless of whether the provider has supervisory authority over the unlicensed provider or is aware of the violation. Am. Compl. ¶¶ 38, 40, 140. Thus, not only Aspire's medical

director, but each of its licensed nurses would have to supervise all healthcare services, information, and counseling at Aspire to avoid liability. *Id.* ¶ 164.

## II.   Plaintiffs state a claim that the Act violates the Free Speech Clause.

Under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). In applying this standard, a court must "accept as true the factual allegations in the complaint and draw all reasonable inferences in plaintiff's favor." *Tanvir v. Tanzin*, 894 F.3d 449, 458 (2d Cir. 2018). In the First Amendment context, "[t]he dismissal of a claim challenging a law that abridges protected speech will rarely, if ever, be appropriate at the pleading stage" because "factual development will likely be indispensable to the assessment of whether [the law] is constitutionally permissible." *Cornelio v. Connecticut*, 32 F.4th 160, 172 (2d Cir. 2022) (cleaned up). Plaintiffs meet that low bar.

### A.  The Act discriminates against Plaintiffs based on their pro-life viewpoint and the content of their speech.

A law is content-based if it "discriminate[s] based on 'the topic discussed or the idea or message expressed.'" *City of Austin, Texas v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 73–74 (2022). "Viewpoint discrimination is a subset of content discrimination in which the government impermissibly targets . . . particular views taken on a subject." *Ognibene v. Parkes*, 671 F.3d 174, 192 (2d Cir. 2011). The Act is both content- and viewpoint-based. Am. Compl. ¶¶ 172–73, 184.

First, Plaintiffs have plausibly alleged that the Act constitutes unlawful viewpoint discrimination because it singles out "limited-services pregnancy centers."

Am. Compl. ¶¶ 172, 184; *see also Citizens United v. FEC*, 558 U.S. 310, 340 (2010) ("Prohibited, too, are restrictions distinguishing among different speakers, allowing speech by some but not others."). Importantly, "viewpoint discrimination is scrutinized closely whether or not it occurs in the commercial speech context." *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 39 (2d Cir. 2018).

Both the Advertising Prohibition and Provider Restriction apply *only* to pregnancy centers that do not provide or refer for abortion. Am. Compl. ¶ 100; *see also* 9 V.S.A. §§ 2492(5), 2493. A pregnancy center that offers all the same services, information, and counseling as Plaintiffs but provides or refers for abortion is exempt. Worse, the Act's legislative findings reveal that the General Assembly intended to specifically target "[c]enters that seek to counsel clients against abortion." *Id.* § 2491(a)(1); *accord* Am. Compl. ¶ 95. That is, by definition, viewpoint discrimination.

The Act is also content-based. It would be impossible to determine whether an advertisement is misleading or whether information or counseling relates to health care without reference to what it *says*. And the Court "has stressed the danger of content-based regulations in the fields of medicine and public health, where information can save lives." *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2374 (2018) (cleaned up). This concern is especially salient where a law is "clearly aimed at influencing the supply of information, a core First Amendment concern," due to fear that the information may be "biased." *IMS Health Inc. v. Sorrell*, 630 F.3d 263, 272, 277 (2d Cir. 2010). Therefore, Plaintiffs have plausibly alleged facts showing that the Act is both viewpoint and content discriminatory.

11

**B. The Advertising Prohibition restricts non-commercial speech.**

The Supreme Court has recognized that a permissible prohibition on false or misleading *commercial* speech would be an impermissible content-based regulation as applied to *non-commercial* speech. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 563–64 & n.6 (1980). "Commercial speech" is "speech that does no more than propose a commercial transaction." *Harris v. Quinn*, 573 U.S. 616, 648 (2014). Plaintiffs have plausibly alleged that the Advertising Prohibition restricts their non-commercial speech; they do not charge for their services. Am. Compl. ¶¶ 15, 27, 44, 106, 171; *see also* Defs.' Am. Mot. 20–21 (Plaintiffs do not charge for their services). That should end the matter.

Yet the State relies on a single out-of-circuit case to argue that "[a]n 'economic motivation' is not limited 'to circumstances where clients pay for services.'" Defs.' Am. Mot. 11 (quoting *First Resort, Inc. v. Herrera*, 860 F.3d 1263, 1273 (9th Cir. 2017)). But the Supreme Court has held that even "the solicitation of charitable contributions is protected speech." *Riley v. Nat'l Fed. of the Blind of N.C., Inc.*, 487 U.S. 781, 789 (1988). And more recently, it declined to apply the commercial speech doctrine to a law regulating pregnancy centers in *NIFLA*. 138 S. Ct. at 2372.

More importantly, *First Resort* directly conflicts with Second Circuit case law. In *Transportation Alternatives, Inc. v. City of New York*, the Second Circuit considered a city ordinance requiring a special fee for events with commercial sponsorship. 340 F.3d 72, 75–76 (2d Cir. 2003). The non-profit plaintiff there wished to host "the New York City Century Bike Tour" as "a fundraiser and an opportunity for advocacy." *Id.* at 76. Despite the organization's fundraising purposes, the Second

Circuit held that "[t]he commercial elements of the Bike Tour [we]re relatively trivial" and "this speech was a far distance from commercial speech undertaken to solicit a commercial transaction." *Id.* at 78. Under *Transportation Alternatives*, that Plaintiffs advertisements may indirectly impact fundraising (to, in turn, provide free services) does not render those advertisements commercial speech. Plaintiffs have plausibly alleged that the Advertising Prohibition restricts their non-commercial speech.

### C. The Provider Restriction regulates professional (and unprofessional) speech.

Plaintiffs have plausibly alleged that the Provider Restriction regulates "pure speech because it directly regulates speech about health-care-related 'information' and 'counseling' by 'limited services pregnancy centers,' even when no medical treatment or procedure is involved." Am. Compl. ¶ 184 (citing 9 V.S.A. § 2493(b)); *see also id.* ¶¶ 14, 29, 45, 53 (Plaintiffs do not provide or refer for abortion). The Supreme Court held in *NIFLA* that "[s]peech is not unprotected merely because it is uttered by 'professionals.'" 138 S. Ct. at 2371–72. And while drawing the speech/conduct line can be difficult, the Court emphasized that "a State may not, under the guise of prohibiting professional misconduct, ignore constitutional rights." *Id.* at 2373.

The State argues that the Provider Restriction is a "state licensing regulation." Defs.' Am. Mot. 14. But by the State's own admission, the Provider Restriction goes beyond regulating the speech of licensed professionals by making them responsible for the speech of unlicensed professionals. *Id.* at 23. Regardless, licensing requirements do not give the State "unfettered power to reduce a group's First Amendment rights." *Brokamp v. James*, 66 F.4th 374, 391 (2d Cir. 2023). While a

13

State may "decide that particular functions may be performed only by licensed professionals," *Mazurek v. Armstrong*, 520 U.S. 968, 973 (1997), a licensing requirement "directed narrowly and specifically at expression or conduct commonly associated with expression" is an impermissible "prior restraint" if it is "based on the content or viewpoint of the speech." *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 760 (1988).

The cases cited by the State explicitly recognize that "[t]he Supreme Court has made clear that if regulations impose *content-based* restrictions on speech, strict scrutiny or intermediate scrutiny may be applied, depending on whether the affected speech was commercial speech." *Gray v. Dep't of Pub. Safety*, 248 A.3d 212, 219–20 (Me. 2021). There, the Maine Supreme Judicial Court upheld a licensing law that "require[ed] good character and competency in investigating matters" because it "d[id] not on [its] face prohibit or constrain speech." *Id.* at 221. Similarly, the Fourth Circuit upheld a North Carolina "ban on the *practice* of law" because it did not "target the communicative aspects of practicing law, such as the advice lawyers may give to clients." *Capital Assoc. Indus., Inc. v. Stein*, 922 F.3d 198, 207–08 (4th Cir. 2019) (emphasis added). Although the Eleventh Circuit upheld a Florida law regulating "nutrition counseling," it did so only because "counseling" was defined narrowly to include only speech incidental to "conducting nutrition research, developing a nutrition care system, and integrating information from a nutrition assessment are not speech." *Del Castillo v. Sec'y, Fla. Dep't of Health*, 26 F.4th 1214, 1225–26 (11th Cir. 2022). And while the Supreme Court held that a lawyer's in-person solicitation

14

of clients for pecuniary gain constituted *commercial* speech, *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 449, 455–59 (1978), not all "professional speech" is "commercial speech," *see Bd. of Trs. v. Fox*, 492 U.S. 469, 482 (1989).

In contrast, the Provider Restriction facially regulates not only "health care services," but also health care "information" and "counseling." 9 V.S.A. § 2493(b). The Restriction broadly defines "health information" as "any oral or written information in any form or medium that relates to . . . the past, present or future physical or mental health or condition of a client." Am. Compl. ¶ 144 (quoting 9 V.S.A. § 2492(4)). It applies "regardless of whether a medical procedure is ever sought, offered, or performed." *See NIFLA,* 138 S. Ct. at 2373. And unlike the Florida law in *Del Castillo*, it does not narrow counseling to speech incidental to a medical procedure. For instance, the Provider Restriction might apply to peer counseling concerning a woman's feelings about her pregnancy, a medical condition. Am. Compl. ¶ 159. Thus, the Provider Restriction regulates speech, not conduct.

### D. The Act fails heightened scrutiny.

Content-based restrictions on speech "can stand only if they survive strict scrutiny, which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 171 (2015) (cleaned up). And "it must be the least restrictive means" of achieving that interest, *McCullen v. Coakley*, 573 U.S. 464, 478 (2014), which the State fails to address. But the Act cannot survive even intermediate scrutiny. Am. Compl. ¶¶ 174–80, 187–90.

15

Under intermediate scrutiny, "it is defendants' burden to demonstrate that the requirement . . . (1) advances important governmental interests unrelated to the suppression of free speech, and (2) does not burden substantially more speech than necessary to further those interests." *Brokamp*, 66 F.4th at 397. The State argues that the Act advances its interests "in ensuring that (1) consumers are protected against unfair and deceptive business practices, including false advertising, and (2) where a licensed provider is involved, patients can trust that health care services, information, and counseling is provided in accordance with State law and professional standards of practice." Defs.' Am. Mot. 18.

1.     A State cannot leverage its interest in protecting consumers against unfair and deceptive business practices to target speech based on its viewpoint. The only Second Circuit case that the State cites in support of its "strong interest," *id.* at 20, applies the "more lenient review" applicable to "[r]egulations that compel 'purely factual and uncontroversial' commercial speech," *Nat'l Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104, 113 (2d Cir. 2001), not the heightened scrutiny appropriate to viewpoint discriminatory regulations of "abortion, anything but an 'uncontroversial' topic," *NIFLA*, 138 S. Ct. at 2372. Similarly, the Ninth Circuit found that a California advertising statute was viewpoint neutral. *Ass'n of Nat'l Advertisers v. Lungren*, 44 F.3d 726, 729 (9th Cir. 1994). The District of Minnesota did not even mention viewpoint discrimination in *1-800-411-Pain Referral Service, LLC v. Tollefson*, 915 F. Supp. 2d 1032 (D. Minn. 2012). And again, *First Resort* is inconsistent with Second Circuit case law. *See supra* Part II.B.

Regardless, the Advertising Prohibition is "not sufficiently drawn to achieve" any state interest because it "unduly burdens protected speech." *NIFLA*, 138 S. Ct. at 2375, 2377. If Vermont's goal is to "protect[] consumers from deceptive and misleading advertising," Defs.' Am. Mot. 20, then the Advertising Prohibition is "wildly underinclusive," *NIFLA*, 138 S. Ct. at 2375. The General Assembly could have extended its existing consumer protection laws to cover *all* entities that provide free goods and services, regardless of whether those entities have the primary purpose of providing services to pregnant women, have the appearance of a medical facility, or provide or refer for abortion, *see id.* at 2375–76. Such "[u]nderinclusiveness raises serious doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint." *Id.* at 2376.

The advertising prohibition is also overinclusive. If Vermont's goal is to "ensur[e] that the choice to have or terminate a pregnancy is 'well-informed,'" Defs.' Am. Mot. 20, it could have enacted a narrow informed-consent law applicable to prenatal care, delivery, and abortion, *see NIFLA*, 138 S. Ct. at 2373–74. Or Vermont "could inform [pregnant] women about [abortion] services without burdening a speaker with unwanted speech." *Id.* at 2376; *see also Evergreen Ass'n, Inc. v. City of New York*, 740 F.3d 233, 249 (2d Cir. 2014) (requiring pregnancy centers to disclose whether they provide abortion "overly burdens [the centers'] speech"). It could accomplish this goal through "a public-information campaign" or by "post[ing] the information on public property near . . . pregnancy centers." *NIFLA*, 138 S. Ct. at

2376. Because the Advertising Prohibition is not sufficiently drawn to achieve any important state interest, it fails intermediate scrutiny.

2.      Likewise, the Provider Restriction cannot survive intermediate scrutiny. Even assuming the State has important interests in ensuring that women are fully informed of their reproductive health care options and "in protecting the legitimacy of its licensed professions," Defs.' Am. Mot. 22, the Provider Restriction is not sufficiently drawn to achieve those interests. Like the Advertising Prohibition, the Provider Restriction "covers a curiously narrow subset of speakers." *NIFLA*, 138 S. Ct. at 2377. The State explains that the Provider Restriction is intended to "extend[] its licensing power to the extent possible to curb patient harms perpetrated by unlicensed providers," Defs.' Am. Mot. 23—the very same unlicensed providers that the State elsewhere claims are unregulated by the Provider Restriction, *id.* at 9. Even if the State seeks to accomplish this goal by "holding licensed health care providers responsible for ensuring that their co-workers don't do anything the professional couldn't do," *id.* at 23, it should have enacted a neutral law extending that duty to licensed providers at abortion clinics or pregnancy centers that refer for abortion as well, *see* Am. Compl. ¶ 165. This underinclusiveness, as well as the statute's legislative findings and intent, demonstrate that the government's interest is in suppressing speech based on its viewpoint, not holding unlicensed professionals to certain standards. *See NIFLA*, 138 S. Ct. at 2376.

Moreover, the Provider Restriction unduly burdens more speech than necessary. "Health information" is defined broadly to include "any oral or written

information in any form or medium that relates to . . . the past, present, or future physical or mental health condition of a client." 9 V.S.A. § 2492(4). And "counseling" is not defined at all. But the provision of factual information (even contested factual information) about pregnancy, childbirth, and abortion is critical to a pregnancy center's ability to counsel women to choose life. Am. Compl. ¶¶ 13, 26, 43, 80, 91–92. Moreover, the State could have achieved its interest in protecting the legitimacy of its licensed professionals using less restrictive means by enforcing its pre-existing professional standards of conduct. Because the Provider Restriction is not narrowly drawn to achieve an important government interest unrelated to the suppression of free speech, it fails intermediate scrutiny.

## III.    Plaintiffs state a claim that the Act is unconstitutionally vague.

Plaintiffs have adequately pled both facial and as-applied vagueness claims. *Id.* ¶¶ 191–204. "Among the most fundamental protections of due process is the principle that [everyone is] entitled to be informed as to what the State commands or forbids." *Cunney v. Bd. of Trs. of Vill. of Grand View, N.Y.*, 660 F.3d 612, 620 (2d Cir. 2011) (cleaned up). "Vagueness review is heightened when . . . a challenged statute pertains to speech protected by the First Amendment." *Brokamp*, 66 F.4th at 403. Under Supreme Court and Second Circuit precedent, "[a] statute is unconstitutionally vague in violation of the Due Process Clause if it (1) fails to provide a person of ordinary intelligence with fair notice of what is prohibited, or (2) is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Id.* at 403 (cleaned up).

A "prospective as-applied" vagueness challenge "seeks to prove that a statute cannot constitutionally be applied to a specific course of conduct that the challenger intends to follow." *Copeland*, 893 F.3d at 112. But "a challenger may raise a facial challenge if the statute implicates rights protected by the First Amendment, even if the statute is not vague as applied to that challenger's conduct." *United States v. Requena*, 980 F.3d 30, 39 (2d Cir. 2020). While a plaintiff must normally show that a statute is vague in all its applications to succeed on a facial vagueness challenge, this "general rule disfavoring facial vagueness challenges does not apply in the First Amendment context." *Farrell*, 449 F.3d at 496.

Where a challenged statute "raises serious First Amendment concerns" and there are "colorable arguments from both parties" as to its meaning, a court should not "dismiss Plaintiff's facial vagueness claim." *Brooklyn Branch of NAACP v. Kosinski*, 657 F. Supp. 3d 504, 532–33 (S.D.N.Y. 2023).

## A. The Advertising Prohibition is unconstitutionally vague.

Plaintiffs have plausibly alleged that the Advertising Prohibition is subject to more than one "valid approach[] to statutory interpretation." *Id.* at 533; *see also* Am. Compl. ¶¶ 105, 111–12, 115, 122, 129, 191–96. The Advertising Prohibition fails to define or limit "mislead." Am. Compl. ¶¶ 105, 195. It does not include a scienter requirement nor require materiality. *See Rubin v. Garvin*, 544 F.3d 461, 467 (2d Cir. 2008) (explaining that "[a] sicenter requirement may mitigate a law's vagueness").

The State argues that "[a] statement is misleading under the [Vermont Consumer Protection Act] if it is likely to mislead a reasonable consumer." Defs.' Am. Mot. 25 (quoting *Ehlers v. Ben & Jerry's Homemade Inc.*, No. 2:19-cv-00194, 2020 WL

20

2218858, at *5 (D. Vt. May 7, 2020)). But that definition is circular. Moreover, neither *Ehlers* nor the Vermont Supreme Court cases on which it relies involved vagueness challenges. *See Ehlers*, 2020 WL 2218858, at *1 (motion to dismiss consumer protection action); *Lofts Essex LLC v. Strategis Floor & Décor Inc.*, 224 A.3d 116, 218 (Vt. 2019) (sufficiency of the evidence on VCPA claim); *Lang McLaughrey Spera Real Estate, LLC v. Hindsdale*, 35 A.3d 100, 110–11 (Vt. 2011) (consumer fraud lawsuit); *see also Donaldson v. Read Magazine*, 333 U.S. 178, 180–81 (1947) (sufficiency of the evidence under federal consumer fraud statute); *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 495 (2d Cir. 2020) (interpreting New York General Business Law).

The State next argues that the term "mislead" "targets advertising crafted to cause people to misunderstand what services a limited-services pregnancy center provides." Defs.' Am. Mot. 25. In support, the State cites a single unreported, out-of-circuit case holding that a similar California pregnancy Center ordinance "specifically pertains to advertising that mislead[s] women contemplating abortion into believing that their facilities offer abortion services and unbiased counseling." *First Resort, Inc. v. Herrera*, No. 4:11-cv-5534, 2012 WL 4497799, at *5 (N.D. Cal. Sept. 28, 2012). But the State elsewhere disclaims that Plaintiffs' Google ads offering "reproductive health services" and "abortion information" are misleading. Defs.' Am. Mot. 7. Thus, it remains unclear precisely what statements would "mislead" women to believe that Plaintiffs offer "abortion services and unbiased counseling."

Moreover, other federal courts have struck down laws prohibiting misleading political advertisements as unconstitutionally vague. For example, in *Winter v.*

*Wolnitzek*, a federal district court struck down a judicial conduct statute, explaining that "even reasonable people can disagree about what constitutes a 'misleading' statement." 186 F. Supp. 3d 673, 700 (E.D. Ky. 2016), *aff'd on other grounds*, 834 F.3d 681, 694, 696 (6th Cir. 2016). Similarly, another federal district court struck down Nevada's judicial conduct statute "because a judicial candidate cannot objectively ascertain what additional facts must be included to avoid a 'materially misleading statement.'" *Kishner v. Nev. Standing Comm. on Jud. Ethics & Election Pracs.*, No. 2:10-cv-01858, 2010 WL 4365951, at *6 (D. Nev. Oct. 28, 2010).

Because the Advertising Prohibition fails to define relevant terms and is subject to multiple valid interpretations, a "more fulsome analysis of [its] language and legislative history . . . is necessary" to determine whether it is unconstitutionally vague. *Brooklyn Branch*, 657 F. Supp. 3d at 533.

**B. The Provider Restriction is unconstitutionally vague.**

Plaintiffs have plausibly alleged that the Provider Restriction fails to define relevant terms and is subject to more than one "valid" interpretation. *Kosinski*, 2023 WL 2185901, at *18; *see also* Am. Compl. ¶¶ 143–45, 155–60, 197–204.

First, the Provider Restriction does not define "health *care* information." The Act does define "health information" as "any oral or written information in any form or medium that relates to health insurance or the past, present, or future physical or mental health or condition of a client." Am. Compl. ¶ 144 (quoting 9 V.S.A. § 2492(4)). Even if this definition applies to the Provider Restriction (an issue that the State does not address), that definition is vague and overbroad.

22

Indeed, the definition of "health information" is so broad as to include a brochure explaining a biblical view of fetal personhood because it relates to a client's pregnancy—a physical health condition. "Without an adequate definition" of health care information, the Provider Restriction "presents a risk of arbitrary and discriminatory enforcement" by state officials who dislike the information that pregnancy centers provide. *See Montagno v. City of Burlington*, No. 2:16-cv-232, 2017 WL 2399456, at *18 (D. Vt. June 1, 2017). This risk of discriminatory enforcement is heightened here because the provider restriction applies only to pro-life pregnancy centers. *See supra* Part II.A.

Second, the Provider Restriction does not define health care "counseling," Am. Compl. ¶ 145, and the State failed to offer any construction in its memorandum. Absent a definition, it is impossible for Plaintiffs to determine "whether 'counseling' is meant to apply narrowly to informed consent or mental health counseling or broadly to any person at a pregnancy center who might talk with a woman about whether to have an abortion, or counsel her concerning pregnancy, pregnancy prevention, parenting, or childbirth." *Id*. ¶ 159.

Third, the term "health care services" is not defined for purposes of the Act. *Id*. ¶ 143. SB 37 elsewhere defines "health care services" as "services for the diagnosis, prevention, treatment, cure, or relief of a physical or mental health condition, including procedures, products, devices, and medications." *Id*. (quoting 3 V.S.A. § 129a(f)(2)(B); 26 V.S.A. § 1354(d)(2)(B)). If this definition applies to the Provider Restriction, it is vague and overbroad. Even an over-the-counter pregnancy test might

23

be considered a health care service because it is used to diagnose pregnancy, a physical health condition. *Id.* ¶ 155. The State appears to disclaim this interpretation, Defs' Am. Mot. 10, arguing that "health care services" is limited by "the scope of services regulated by a health care professional's standards," *id.* at 26. But that statute provides the same broad definition of "health care services" cited above. *See* 26 V.S.A. § 1354(d)(2)(B). And *Kelley v. Apria Healthcare, LLC*, 232 F. Supp. 3d 983, 992 (E.D. Tenn. 2017), *see* Defs.' Am. Mot. 26–27, did not involve a vagueness challenge at all. Instead, the court merely held that the defendant—a manufacturer of medical equipment—did not provide health care services because it provided *no* services directly to patients. *Kelley*, 232 F. Supp. 3d at 992.

The Provider Restriction is also vague as to "whether it requires licensed health care providers to personally provide or conduct all health care services, information, and counseling" and "whether it subjects pregnancy centers without any licensed providers to penalties." Am. Compl. ¶¶ 139, 166, 202, 203. The State argues that it does not, *see* Defs.' Am. Mot. 27, but some of the provision's language suggests otherwise, *see supra* Part I.B.

The State's remaining arguments do not cure the Provider Restriction's vagueness. The State argues that the Act "is . . . not subject to arbitrary enforcement because it is part of the Consumer Protection Act, which requires an 'objective probable cause standard.'" Defs.' Am. Mot. 27 (citing *Diamond v. Vickrey*, 367 A.2d 668 (Vt. 1976)). But the Provider Restriction is enforced under Vermont's statutes governing unprofessional conduct, not its Consumer Protection Act. 9 V.S.A.

§ 2493(b); Am. Compl. ¶¶ 147–51. Regardless, while a "scienter requirement[]" may "alleviate vagueness concerns," *Gonzales v. Carhart*, 440 U.S. 124, 149 (2007), an "objective probable cause standard" is not a scienter requirement, *see Ruan v. United States*, 597 U.S. 450, 456, 465 (2022).

The State further argues that licensing actions under the Provider Restriction are limited to violations of statutory professional standards. Defs.' Am. Mot. 27. But that narrow interpretation would render the Provider Restriction duplicative of Vermont's other professional licensing laws. By the State's own admission, the Provider Restriction adds a *new* legal basis for a finding of unprofessional conduct by holding licensed providers at pro-life pregnancy centers responsible for "ensuring that their co-workers don't do anything the professional couldn't do." *Id.* at 23.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully urge this Court to deny the State's amended motion to dismiss.

Respectfully submitted this 7th day of February, 2024.

*/s/ Julia C. Payne*
Julia C. Payne*
ALLIANCE DEFENDING FREEDOM
15100 North 90th Street
Scottsdale, Arizona 85260
Telephone: (480) 444-0020
Facsimile: (480) 444-0028
jpayne@ADFlegal.org

*Admitted *pro hac vice*

*/s/ Michael Tierney*
Michael Tierney
Gretchen M. Wade
WADLEIGH, STAR & PETERS, P.L.L.C.
95 Market Street
Manchester, NH 03101
Telephone: (603) 669-4140
Facsimile: (603) 669-6018
mtierney@wadleighlaw.com
gwade@wadleighlaw.com

*Counsel for Plaintiffs*

25

**CERTIFICATE OF SERVICE**

I hereby certify that on February 7, 2024, I electronically filed the foregoing on the Court's CM/ECF system, which automatically sends an electronic notification with this filing to all attorneys of record.

*/s/ Julia C. Payne*
Julia C. Payne
